524 So.2d 215 (1988)
TRANSWORLD DRILLING CO. (Strata Energy, Inc., et al Third Party Plaintiffs),
v.
TEXAS GENERAL PETROLEUM CO. (Marmid Energy Corp., Third Party Defendants).
No. CA-9016.
Court of Appeal of Louisiana, Fourth Circuit.
April 12, 1988.
Marcel Garsaud, Jr., Glenda M. Barkate, Gordon, Arata, McCollum, Stuart & Duplantis, New Orleans, for third party plaintiffs/appellants.
Patrick S. Ottinger, Ottinger & Gates, Lafayette, for third-party defendants/appellees.
Before BYRNES, CIACCIO and PLOTKIN, JJ.
PLOTKIN, Judge.
Appellants/third party plaintiffs, Strata Energy Inc. (Strata) and NRM Petroleum Corp. (NRM), appeal the granting of a motion for summary judgment in favor of appellee/third party defendants, Marmid Energy Corp. (Marmid). We reverse and remand.
A factual history is necessary to explain this complex litigation, which has previously appeared in this court on a number of occasions.[1] *216 Texas General Petroleum Corp. (TGP), a well operator, acquired a mineral interest in State Lease 10090 in Plaquemines Parish on February 15, 1982. On March 5, 1982, TGP assigned an undivided one-half (½) interest in the lease to Strata. TGP and Strata entered into a joint operating agreement to share in the drilling costs.
On June 15, 1982, TGP established a line of credit with Marine Midland Bank, N.A. (Bank) and executed and recorded a collateral mortgage on State Lease 10090 and other TGP properties.
On June 29, 1982, Transworld Drilling Co. (Transworld), which had contracted with TGP to provide drilling services, sued TGP and others to recover drilling costs and services and for recognition of its lien, as driller, on State Lease 10090, among others. Strata was not made a party to these proceedings. However, Strata claims that it had paid TGP its portion of the drilling costs under the joint operating agreement. Those funds were not transmitted to Transworld.
On December 17, 1982, all defendants except TGP and its parent corporation, Texas General Resources Inc., were voluntarily dismissed.
On March 14, 1983, TGP filed for reorganization under Chapter 11 of the Bankruptcy Act in Houston, Texas. At the time, it owed the Bank $48 million.
On September 12, 1983, Strata assigned all of its one-half interest in State Lease 10090 to NRM.
On July 14, 1984, TGP and the Bank entered into an "Agreed Order to Modify the Stay," wherein TGP, the official creditor's committee and the court authorized a $21 million credit against TGP's debt to the Bank, in exchange for an assignment. The order stated, in pertinent part, as follows:
[T]he debtor shall and does hereby sell, transfer, assign, grant and convey unto the Bank, subject only to liens, claims and encumbrances, if any, which are superior to the lien of the Bank, including the liens granted by orders of this Court....
Subsequently on July 25, 1984, TGP executed a formal assignment to Marmid, as the nominee of the Bank, as authorized by the Bankruptcy Court. The assignment reads as follows:
WHEREAS, the Bankruptcy Court has approved an Agreed Order dated July 18, 1984, authorizing TGP to grant, sell, and convey unto BANK or its nominee the properties and interests more particuarly (sic) described herein, subject only to liens, claims and encumbrances, if any, which are superior to the liens of BANK including the liens granted by orders of the Bankruptcy Court, if any, relating to the properties and interests described hereinafter; ...
NOW, THEREFORE, TGP, subject to the matters set forth hereinafter, for and in consideration of the premises and the debts of TGP to BANK has granted, bargained, sold, assigned, transferred and conveyed, and by these presents does GRANT, BARGAIN, SELL, ASSIGN, TRANSFER and CONVEY unto MARMID effective as of 7:00 a.m. local time, on July 1, 1984 all of TGP's right, title and interest in and to the following properties:....
The assignment also contains a section which provides that Marmid will be liable for various assets and liabilities of TGP. It states as follows:
This assignment is made expressly subject to the following:
1. Except as the same may be limited by the Agreed Order of July 18, 1984, the terms, provisions, conditions and obligations of: ...
c. any operating agreements in force relating to any of the properties and interests decribed in Exhibit "A";....
In February of 1985, the Bankruptcy Court authorized Transworld to proceed *217 against TGP's interest in State Lease 10090. On August 5, 1985, the trial court rendered a judgment in favor of Transworld in the sum of $900,000 and recognized a lien against the state lease. A writ of seizure and sale was issued for State Lease 10090.
On August 22, 1985, Strata and NRM intervened to annul the judgment and enjoin the writ of seizure and sale, which was eventually denied on October 3, 1985. Strata and NRM third-partied Marmid on the theory that Marmid, as nominee of the Bank and as TGP assignee, assumed the obligations of TGP to Strata and NRM arising out of the drilling of State Lease 10090. Marmid filed a motion for summary judgment to this third party demand, which the trial court granted on June 9, 1987.
On October 28, 1986, the Bankruptcy Court rescinded the order authorizing TGP to confess judgment to Transworld. On December 15, 1987, this court reversed the trial court's granting of exceptions of res judicata and no cause or right of action filed against Strata and NRM on the third supplemental petition. Transworld Drilling Co. v. Texas General Petroleum Co., 517 So.2d 1262 (La.App. 4th Cir.1987).
The issue in this appeal is whether a genuine issue of material fact exists between the parties. Appellants allege that the ambivalence of the language in the assignment between TGP and Marmid concerning whether Marmid assumed the debt TGP owed to Strata and whether Strata possessed a lien which guaranteed payment of expenses under the joint operating agreement creates such an issue.
Louisiana courts may appropriately grant motions for summary judgment under La.C.C.P. art. 966 only when reasonable minds must conclude that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. Chaisson v. Domingue, 372 So.2d 1225, 1227 (La.1979). All of the pleadings and supporting documents presented by the parties must be examined prior to a decision on a motion for summary judgment. Brown v. B & G Crane Service, Inc., 172 So.2d 708, 710 (La.App. 4th Cir. 1965).
A motion for summary judgment must be denied if two things are present: (1) a genuine issue of fact which is (2) material to the case. Id. This court has defined a genuine issue as "a triable issue." Id. An issue is material if it is related to one of the elements of the cause of action. Laird v. Travelers Indemnity Co., 236 So.2d 561, 564 (La.App. 4th Cir.1970). The interest of justice is best served, even at the risk of some delay and possible expense, by resolving all doubt against the granting of a motion for summary judgment. Id. All reasonable inferences must be viewed in the light most favorable to the party opposing the motion. Burke v. Occidental Life Ins. Co. of California, 427 So.2d 1165, 1168 (La.1983). Summary judgments usually are inappropriate where subjective facts such as motive, intent, malice, good faith or knowledge are involved. Berger v. Fireman's Fund Ins. Co., 305 So.2d 724, 727 (La.App. 4th Cir.1974).
In the instant case, subjective facts are involved. Appellants Strata and NRM were not parties to the assignment from TGP to Marmid and are therefore unable to divine the intent between the parties. They claim that the assignment was a sale or transfer of TGP obligations, including TGP's obligation to Strata under their joint operating agreement.
Marmid contends that it did not assume the obligations of TGP, except those expressly declared in the Agreed Order and Assignment. Both are silent as to any liability for TGP's operational responsibilities. Marmid argues that it assumed only the ownership of the working interest in the lease and not the liability for the operator's interest. In support of this position, Marmid reasons that C.C. art. 1847 (formerly art. 2278) prohibits parol evidence to establish a promise to pay the debt of a third person because such a promise must be express and in writing. It cites W.H. Ward Lumber Co., Inc. v. International City Bank & Trust Co., 347 So.2d 322 (La.App. 4th Cir.1977) and General Electric Co. v. Martin, 331 So.2d 228 (La.App. 4th Cir.1976) in support of this position.
*218 Marmid is correct that parol evidence is generally inadmissible to establish a promise to pay the debt of another and that such a promise must be express and in writing. However, in all the cases cited by Marmid, no written agreement at all existed. In the instant case, the assignment agreement is written. Furthermore, the provisions of the assignment, in which Marmid agreed to assume the liabilities of TGP, could be interpreted as an express agreement to pay TGP's debts. In this case, determination of the intent of the parties when they entered the assignment therefore controls. "Intent" is one of those subjective facts listed by this court in Berger, supra which usually makes disposal of the case by motion for summary judgment inappropriate.
We conclude that because the assignment agreement contained the language that the sale or transfer was made "subject to the terms, provisions, conditions and obligations of ... any operating agreement in force ...," genuine issue of material fact exists as to whether the parties intended to assume TGP's debt to Strata arising out of their joint operating agreement. Because the assignment is silent as to the definition of the type of TGP operational agreements included, the instrument is ambiguous as to the intent of the parties' assumptions of liability. The evidence may establish that Marmid assumed the primary obligations of TGP, rather than merely the collateral agreement of suretyship. If so, parole evidence is admissible. Schloegel v. N. O. Disposal Service, 261 So.2d 108 (La.App. 4th Cir.1972); Martinez v. Air-Lume Industries, Inc., 233 So.2d 741 (La.App. 4th Cir. 1970).
The affidavits submitted by the parties also raise a genuine issue of material fact as to whether the credit of $21 million of TGP's debt to the Bank included the payment of TGP's debts to others. Strata argues that Marmid may have agreed to the assumption of Strata's claim, which is different than "subject to" liability. Marmid characterizes the transaction as a dation en paiement and argues that it therefore is not liable to unsecured creditors. A determination of the legal nature of this document, confected under Texas law, requires a full factual adjudication, not a summary disposition.
Finally, the joint operating agreement contains language which raises the question of whether Strata acquired a lien from TGP. The agreement states:
Each Non-Operator grants to Operator a lien upon its oil and gas rights in the contract area, and a security interest in its share of oil and/or gas when extracted and its interest in all equipment, to secure payment of its share of expenses.... Operator grants a like lien and security interest to the Non-Operators to secure payment of Operator's proportionate share of expense.
The issue of whether Strata acquired a lien on TGP's interest in the state lease when TGP failed to pay its share of expenses is also a mixed question of fact and law. The assignment to Marmid includes the liability for TGP's liens in the lease. Therefore, the validity of any lien and its assumption by Marmid must be determined by the trial court.
Because genuine issues of material fact still exist between the parties, the trial court's judgment granting Marmid's motion for summary judgment is reversed and remanded for further proceedings in compliance with this opinion.
REVERSED AND REMANDED.
NOTES
[1] Transworld Drilling Co. v. Texas General Petroleum Corp., 480 So.2d 323 (La.App. 4th Cir. 1985); Strata Energy Inc. v. Lobrano, 514 So.2d 626 (La.App. 4th Cir.1987); Transworld Drilling Co. v. Texas General Petroleum Corp., 516 So.2d 468 (La.App. 4th Cir.1987); and Transworld Drilling Co. v. Texas General Petroleum Corp., 517 So.2d 1262 (La.App. 4th Cir.1987).