604 So.2d 586 (1992)
TRANSWORLD DRILLING CO.
v.
TEXAS GENERAL RESOURCES, INC., et al.
No. 91-CA-1709.
Court of Appeal of Louisiana, Fourth Circuit.
June 22, 1992.
Rehearings Denied August 5, 1992.
Writ Denied November 13, 1992.
*587 Harold B. Carter, Jr., John Y. Pearce, Timothy F. Daniels, Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, for plaintiff/appellee.
Marcel Garsaud, Jr., Guy E. Wall, Paul E. Bullington, Martin E. Landrieu, Gordon, Arata, McCollam & Duplantis, New Orleans, for appellants.
Daniel A. Smith, Deutsch, Kerrigan & Stiles, New Orleans, for appellee.
Before PLOTKIN, JONES and WALTZER, JJ.
PLOTKIN, Judge.
Third-party plaintiffs Strata Energy Inc. and NRM Petroleum Corp. appeal the trial court judgments granting motions for summary judgment in favor of plaintiff Transworld Drilling Co. and third party defendant Sheriff Ernest N. Wooton, Plaquemines Parish sheriff, as well as a judgment denying their motion for partial summary judgment. We reverse in part, affirm in part, and remand the case for further proceedings.

Facts:
This appeal arises out of a complex set of factual circumstances, which has resulted in five previous appeals to this *588 court.[1] Since the trial court judgments on the motions for summary judgment ruled against Strata and NRM, we must consider the facts in the light most favorable to those parties. Vermilion Corp. v. Vaughn, 397 So.2d 490, 493 (La.1981). With that principle in mind, the pertinent facts and dates are listed below:
October 12, 1981Defendant Texas General Petroleum Co. (TGP), a well operator, contracted with Transworld for use of a floating rig for six months
February 10, 1982TGP was granted State Lease No. 10090
March 5, 1982TGP assigned one-half of the lease to Strata; TGP and Strata entered a joint operating agreement designating TGP as operator, but prohibiting TGP from settling any claim arising from the agreement in excess of $10,000
March 5, 1982 to April 14, 1982TGP drilled two wells on State Lease No. 10090, using Transworld's rig; Transworld charged $968,347.56 for those services
March 19, 1982Strata sent its assignment of one-half of the lease to the State Mineral Board for approval under LSA-R.S. 30:128, a prerequisite to recordation in the Plaquemines Parish public records
April 15, 1982 to May 16, 1982Drilling contract had expired, and Transworld's rig performed no drilling work as it was being painted and refurbished; TGP was charged $789,619.90 in "standby charges," but disputed its liability for those charges
April 15, 1982 to January 27, 1983Strata paid TGP approximately $1,500,000 for its share of charges for the drilling of the two wells on State Lease No. 10090 in response to invoices, but was not billed for any of Transworld's standby charges
May 3, 1982Transworld filed a notice of lien against State Lease No. 10090, among others
June 29, 1982Transworld filed suit against TGP claiming $1,834,737.36 in principal secured by a lien on all the leases named in the notice of lien; neither Strata nor any of the other co-owners of the lease were named in the suit
July 6, 1982Transworld filed, in the public records of Plaquemines Parish, a notice of lis pendens, referencing both its suit against TGP and the assertion of the lease against State Lease No. 10090, among others
September 8, 1982Mineral Board approved the assignment to Strata
October 18, 1982TGP recorded the Mineral Board approval of Strata's assignment
November 5, 1982TGP and Transworld entered a settlement agreement
November 5, 1982 to February 1983 TGP paid Transworld $1 million plus interest pursuant to an agreement that the drilling charges for the two wells on State Lease No. 10090 would be paid after, although they were incurred before, the standby charges
March 14, 1983TGP filed for Chapter 11 bankruptcy, staying all legal actions, including Transworld's suit
Summer 1983Upon learning of Transworld's lien against the mineral lease, Strata filed a claim in TGP's bankruptcy proceeding, alleging that TGP had failed to apply Strata's monies in accordance with the terms of the operating agreement
July 25, 1983TGP sold its interest in State Lease No. 10090 to Marmid Energy Corp.
September 27,1983Strata sold its interest in the lease to NRM pursuant to an agreement requiring Strata to indemnify NRM should the lease be lost
September 1983 to July 1985Strata, NRM, TGP, Transworld and others engaged in on-going negotiations to remove the lien from State Lease No. 10090
*589 July 25, 1984TGP assigned its interest in the lease to Marmid Energy Corp.
January 28, 1985Bankruptcy court signed an order, presented by Transworld, lifting the automatic bankruptcy stay and directing TGP to confess judgment
May 31, 1985TGP executed a confession of judgment for $900,000; the judgment, which was signed by TGP even though it no longer had any interest in State Lease No. 10090, recognized and acknowledged Transworld's lien against the lease; the amount of the judgment was $150,000 more than the amount owed
June 10,1985State trial court entered a judgment in favor of Transworld based on the confession of judgment
August 5, 1985Trial court issued a writ of seizure and sale on State Lease No. 10090
August 22, 1985Strata and NRM intervened to enjoin the writ of seizure and sale on State Lease No. 10090
October 3, 1985Injunction denied by trial court
October 10, 1985Strata filed a motion with the bankruptcy court to vacate the order granting relief from the bankruptcy stay
October 28, 1985Bankruptcy Court issued an order denying Strata's motion, but deleting the portion of its previous order requiring TGP to confess judgment, stating that Transworld had "inaccurately" represented that the confession of judgment would not impact any of TGP's creditors
November 15, 1985This court affirmed trial court judgment denying injunction [Transworld Drilling Co. v. Texas General Petroleum Corp., 480 So.2d 323 (La. App. 4th Cir.), writ denied 481 So.2d 134 (La.1985)]
December 11, 1985State Lease No. 10090 was sold in a sheriff's sale in satisfaction of the judgment in favor of Transworld
Thereafter, Strata and NRM filed the instant suit against Transworld and the sheriff, seeking damages and attacking the judgment used to seize and sell the lease, claiming that Transworld obtained the judgment through fraud or ill practices. Trial was set in the matter on May 8, 1991. However, two days prior to trial, the district judge granted Transworld's motion for summary judgment and denied Strata and NRM's motion for partial summary judgment. Then, on June 28, 1991, the trial court granted a motion for summary judgment on behalf of the sheriff. Strata and NRM appeal both judgments.

Standard for Granting Motion for Summary Judgment
Appellate courts apply a de novo standard of review when considering trial court judgments on motions for summary judgment, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. Schroeder v. Board of Supervisors, 591 So.2d 342, 345 (La.1991). Thus, the appellate court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law." La.C.C.P. art. 966(B). It follows from the above standard that a motion for summary judgment may be granted only when the mover has proven both of the following elements: (1) no genuine issues of material fact exist, and (2) the mover is entitled to judgment as a matter of law. Chaisson v. Domingue, 372 So.2d 1225, 1227 (La.1979); Transworld Drilling v. Texas General Petroleum Co., 524 So.2d 215, 217 (La.App. 4th Cir.1988). All evidence and inferences drawn from the evidence must be construed in the light most favorable to the party opposing the motion; all allegations of the party opposing the motion must be taken as true and all doubt must be resolved in his favor. Schroeder, 591 So.2d at 345. In determining whether the movant has satisfied his burden of showing that no genuine issues of material fact exist and that he is entitled to judgment as a matter of law, documents supporting the movant's position are closely scrutinized, while the opposing documents are treated indulgently. Industrial Sand and Abrasives, Inc. v. Louisville & Nashville Railroad *590 Co., 427 So.2d 1152, 1154 (La.1983); Morcos v. EMS, Inc., 570 So.2d 69, 72 (La. App. 4th Cir.1990). Granting of the motion may not be based on the court's belief that the party opposing the motion has little chance of succeeding at trial. Id. at 76.

Granting Transworld's Motion for Summary Judgment
In his written reasons for granting the motion for summary judgment on behalf of Transworld, the trial judge concluded as follows:
Transworld has taken lawful steps to collect a debt. Strata and NRM have required Transworld to defend an unsupported allegation of fraud. There is no evidence of fraud. Absent a showing of fraud, Transworld should not have to be subjected to a jury trial.
The above statements indicate that the trial judge applied an incorrect standard for granting a motion for summary judgment. Instead of considering whether Transworld proved the two elements necessary for entitlement to summary judgmentthat is (1) that no genuine issues of material fact existed and (2) that Transworld was entitled to judgment as a matter of lawthe trial judge found that Transworld should not be subjected to a trial because Strata and NRM had failed to prove conclusively that Transworld committed fraud. Essentially, the trial court judgment shifted the burden of showing entitlement to summary judgment away from the movant. Then, the trial court compounded that error, requiring the opponents to prove their case on a motion for summary judgment. Thus, the trial court judgment was manifestly erroneous.
Legal fraud has been defined by the Louisiana Civil Code as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." La.C.C. art. 1953; First National Bank v. Campo, 537 So.2d 268, 271 (La.App. 4th Cir.1988), writ denied 538 So.2d 578 (La.1989). The Civil Code also recognizes that fraud may be the result of "silence or inaction." La. C.C. art. 1953. Two elements are necessary to prove fraud: (1) an intent to defraud, and (2) actual or potential loss or damages. Wilson v. Wilson, 542 So.2d 568, 572 (La.App. 1st Cir.1989). Although fraud is never presumed, it must be proven only by a preponderance of the evidence. Bell v. Vickers, 568 So.2d 160, 166 (La.App. 2d Cir.1990). Circumstantial evidence, including "[h]ighly suspicious facts and circumstances surrounding a transaction," may be considered in determining whether a fraud has been committed. Id. at 166-67. In Louisiana, "[f]raud vitiates all things, and the law furnishes a remedy against fraud, when exposed, whatever guise it may assume." Dohm v. O'Keefe, 458 So.2d 964, 966 (La.App. 4th Cir.1984), writ denied 460 So.2d 1046 (La.1988). Fraud must be alleged with particularity. La. C.C.P. art. 856.
In the instant case, numerous genuine issues of material fact pertinent to determining whether Transworld committed a fraud which resulted in damage to the appellants remain. Strata and NRM allege that Transworld initiated negotiations and later executed the November 1982 settlement agreement with TGP, which resulted in damage to Strata, without notifying Strata of its intended actions, even though Transworld knew prior to the date of execution that Strata held an interest in the state lease. Specifically, the appellants allege that Transworld knew that TGP was Strata's agent and knew that TGP's authority as agent was limited. Thus, Strata and NRM claim, Transworld also intentionally interfered with Strata's contractual relations with TGP. Additionally, according to the appellants, Transworld colluded with TGP in making an "inaccurate... representation" to the bankruptcy court when filing its motion to lift the automatic stay so that the confession of judgment could be executed, all to the detriment of the appellants.[2]
*591 Also pertinent to the fraud issue is the appellants' contention that Transworld and TGP conspired to defraud Strata by applying payments to the standby charges in preference to the drilling charges. Strata and NRM claim that that agreement imputing payment to more recent charges before older charges was illegal under Louisiana law, especially in light of the fact that TGP allegedly lacked the authority to enter the agreement. The appellants also claim that the agreement was improper because the debt had previously been extinguished. Finally, the Strata and NRM contend that the agreement was improper because a lien could not be used to insure payment of the standby charges under Louisiana's Oil, Gas and Water Well Lien Statute.
Despite the existence of all of the above issues of fact, Transworld claims it is entitled to summary judgment because this court previously found that its actions were "lawful and proper and did not constitute fraud or ill practice as a matter of law," citing Transworld Drilling Co., 480 So.2d 323. Transworld alleges that accepting the appellants' arguments would render Louisiana's public records doctrine meaningless and "wreak havoc" on Louisiana's real estate and oil and gas industries. Transworld claims that the trial court was correct in finding that it simply "did what the law allows and requires."
In Transworld Drilling Co., 480 So.2d 323, this court affirmed a trial court judgment denying the appellants' motion for injunction to halt the sale of the state mineral lease, holding that Transworld "fully discharged its duty to third parties" and "was free to pursue the litigation against Texas General without further regard to such third parties" when it filed the notice of lis pendens in the Plaquemines Parish public records. Id. at 325. This decision was predicated on a finding that Strata was a third party to the litigation at the time the suit and the notice of lis pendens were filed because the assignment to Strata had not yet been approved by the State Mineral Board as required by LSA-R.S. 30:128. The court also specifically stated that it did not "find Transworld's action in securing a confession of judgment from Texas General to be a fraud or ill practice against intervenors." Id.
However, this court's decision in the previous case cited above was directed specifically to consideration of whether Strata and NRM were entitled to injunctive relief from the seizure and sale of the lease. Additionally, even Transworld concedes that this court did not consider the bankruptcy court's order vacating a portion of the former order allowing the confession of judgment and finding that Transworld and TGP had made "inaccurate ... misrepresentations" in securing the former order. Given those facts, the former opinion is not res judicata on the issue of whether Transworld should be held liable to the appellants for damages suffered as a result of an alleged fraud. This is especially true in light of the fact that many of the allegations of fraud asserted in the instant suit were not addressed by the previous opinion.
Transworld also claims that Strata and NRM only resorted to filing suit against it when TGP became bankrupt.
*592 Transworld claims that TGP owes a debt to the appellants which they are unable to collect because of the debtor's bankruptcy; thus, the appellants are improperly seeking to collect that debt from Transworld. However, under Louisiana law, all persons who participated in and were beneficiaries of an alleged fraud are proper parties to a suit seeking relief on the basis of that fraud. Dohm, 458 So.2d at 965. Unquestionably, the appellants in this case allege that Transworld both participated in and was a beneficiary of the alleged fraud causing their damages.
Accordingly, the judgment of the trial court granting Transworld's motion for summary judgment is reversed.

Denying Appellants' Motion for Partial Summary Judgment
Appellants' arguments on the denial of their own motion for partial summary judgment are somewhat confusing. By way of their motion, Strata and NRM sought a ruling that "Transworld's judgment in this matter against Texas General was obtained by `fraud or ill practices,' as provided in Article 2004 of the Louisiana Code of Civil Procedure." On appeal, Strata and NRM argue that the trial court applied an improper standard in reaching its decision because it failed to consider the "ill practices" component of the codal article. The appellants also argue that the denial of their motion for partial summary judgment was incorrect because "the Bankruptcy Court Order that Directed TGP to Confess Judgment was Vacated Due to Transworld's Misrepresentation and Improper Practices." However, both the original motion and the appellate brief fail to clearly explain how such facts, even if true, entitle Strata and NRM to partial summary judgment.
The appellants cite the codal articles dealing with Actions for Nullity in conjunction with their arguments on this issue. La.C.C.P. arts. 2001-2006. However, those articles, when considered in conjunction with the jurisprudence interpreting their provisions, unquestionably require the filing of a direct "Action For Nullity" when seeking to annul a relatively null judgment because of "fraud or ill practices" based on La.C.C.P. art. 2004. Ledford v. Pipes, 507 So.2d 9, 11 (La.App. 2d Cir.1987). Since the appellants did not file a direct action for nullity, but sought a ruling that the judgment was null through a motion for partial summary judgment, the trial court correctly denied the motion.
Furthermore, as stated above, the determination of whether Transworld committed fraud which caused damages to the appellants depends on numerous "genuine issues of material fact," raised by the appellants themselves. For that reason also, the trial court judgment denying the motion for partial summary judgment filed by Strata and NRM was correct. Accordingly, that judgment is affirmed.

Granting of Sheriff Wooten's Motion for Summary Judgment
In granting the sheriff's motion for summary judgment, the trial court failed to issue reasons. Sheriff Wooten argues in brief that the trial court judgment is correct because he is protected by the Public Records Doctrine and because the proper procedure to cancel a conveyance inscription is a writ of mandamus directed toward the clerk of court.
Sheriff Wooten was named as a defendant in Strata and NRM's Third Supplemental and Amending Petition. Paragraph 30 of that petition alleges that the sheriff sold State Lease No. 10090 over the objection of the appellants for the amount of the confessed judgment, and that Transworld failed to pay the sheriff or deposit the amount of its bid into the registry of the court. In paragraph 37, Strata and NRM claim that the sheriff's sale should be annulled because the confession of judgment is invalid and because the monies were never paid. Finally, in paragraph 41, the appellants allege as an alternate theory of recovery that Transworld and the sheriff pay the full amount of the bid price plus other damages. In brief, the appellants claim that the sheriff should be held liable for wrongful seizure because he wrongfully and negligently conducted the sale and *593 because he set an insufficient price and improperly accounted for the proceeds.
It is well settled in Louisiana law that sheriffs are individually liable in damages for the negligent discharge of the duties of their office. Citizens Bank v. American Druggists Ins., 471 So.2d 1119, 1122 (La.App. 3d Cir.1985). Among a sheriff's official duties is the appointment of a qualified and competent appraiser for a judicial sale. Id. In Citizens Bank, the court affirmed the granting of a motion for summary judgment against a sheriff, finding that the sheriff could be held liable for damages suffered by a seizing creditor because of the sheriff's appointment of an incompetent appraiser.
The rule established in Citizens Bank is broad enough to cover the circumstances of this case. Since sheriffs may be held liable for negligent discharge of their official duties, it follows that Sheriff Wooten could be found liable for appellants' alleged damages, if the appellants can successfully prove that the sheriff negligently discharged his duties in conducting the sheriff's sale of State Lease No. 10090, either by failing to obtain a valid appraisal or by improperly accounting for the proceeds of the sale. Considering the facts in the light most favorable to the appellants, the record reveals genuine issues of material fact on this issue. Thus, the trial court improperly granted the sheriff's motion for summary judgment. Accordingly, the trial court judgment on this issue is reversed.

Conclusion
For the above and foregoing reasons, the trial court judgments granting motions for summary judgments on behalf of Transworld and Sheriff Wooten are reversed. The trial court judgment denying the motion for summary judgment on behalf of Strata and NRM is affirmed. The case is remanded for trial. Because the motions for summary judgment were granted only two days prior to the scheduled trial date, the parties are entitled to a preferential trial date.
REVERSED IN PART; AFFIRMED IN PART; REMANDED.

ON REHEARING
In our original opinion, we erroneously stated that Strata and NRM failed to file a direct action for nullity, and that they had improperly sought a ruling that the judgment was null by filing a motion for partial summary judgment. In fact, Strata and NRM did properly file a Petition for Nullity. However, this factual error does not change our decision affirming the trial court's denial of Strata and NRM's motion for partial summary judgment. As noted in our original judgment, the record reveals numerous "genuine issues of material fact" regarding Transworld's alleged "ill practices" which resulted in the judgment Strata and NRM seek to annul. Since Strata and NRM failed to meet their burden of proving both that no genuine issues of material fact exist and that they are entitled to judgment as a matter of law, the trial court properly denied their motion for partial summary judgment.
NOTES
[1] Transworld Drilling Co. v. Texas General Petroleum Corp., 480 So.2d 323 (La.App. 4th Cir.) writ denied 481 So.2d 134 (La.1985); Strata Energy Inc. v. Lobrano, 514 So.2d 626 (La.App. 4th Cir.1987); Transworld Drilling Co. v. Texas General Petroleum Corp., 516 So.2d 468 (La.App. 4th Cir.1987); Transworld Drilling Co. v. Texas General Petroleum Corp., 517 So.2d 1262 (La. App. 4th Cir.1987); and Transworld Drilling Co. v. Texas General Petroleum Co., 524 So.2d 215 (La.App. 4th Cir.1988).
[2] In vacating a portion of the judgment lifting the stay, the bankruptcy judge stated as follows:

It is undisputed that movant, Strata Energy, Inc. (hereinafter "Strata"), was given no notice of the Motion for Relief From Stay which had been filed by Transworld with the Bankruptcy Court in late 1984.
Even had Strata received such notice, it might not have been aware that a "Confession of Judgment" between TGP and Transworld was contemplated. The "Confession of Judgment was not mentioned among the relief sought in Transworld's Motion for Relief from Stay.
. . . . .
The Order that was presented by Transworld and TGP to Judge Leal for signature contained findings that "execution by the Debtor of a Confession of Judgment in form like that attached hereto as Exhibit `A' will have no impact on the Debtor, its estate and creditors ..."
We now have before us a creditor, Strata, whose interest have been significantly affected by that Confession of Judgment....
This Court finds that that portion of the findings quoted above should be and hereby is vacated, noting that Strata had not been noticed of the motion before Judge Leal, and that the parties present were inaccurate in their representation to him that execution of the proposed "Confession of Judgment" would not impact any creditor of the Debtor.