635 So.2d 1324 (1994)
Diana Baldwin, Wife of/and Lester BALDWIN
v.
Yvonne Kikas, Wife of/and Andrew KIKAS, et al.
No. 93-CA-1739.
Court of Appeal of Louisiana, Fourth Circuit.
April 14, 1994.
*1325 Jeffrey Raines, Sacks & Eason, Metairie, for plaintiffs/appellants.
Marc G. Shachat, W. Anthony Toups, III, Douglas L. Grundmeyer, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, for defendant/appellee (Sears, Roebuck and Co.).
Before BARRY, CIACCIO and LANDRIEU, JJ.
LANDRIEU, Judge.
Plaintiffs, Lester and Diana Baldwin, appeal the dismissal of their suit on a motion for summary judgment granted in favor of the defendant/third-party defendant Sears, Roebuck and Co. (Sears). At issue is whether Sears sold or manufactured the ladder, held itself out to be the manufacturer and whether Sears placed an adequate warning label on the ladder. We affirm.

FACTS
On March 19, 1989, Lester Baldwin was hired by Yvonne and Andrew Kikas to trim a tree located on their property. In order to assist him with this task, the Kikas provided Mr. Baldwin with an aluminum extension ladder. While Mr. Baldwin was standing on the ladder, the ladder's rails collapsed, causing Mr. Baldwin to fall to the ground. As a result of this accident, Mr. Baldwin sustained injuries to his leg. The ladder apparently had a weight capacity of approximately two-hundred (200) pounds, and as Mr. Baldwin weighed between two-hundred and fifteen to two-hundred and twenty (215-220) pounds, the ladder gave way under his weight. When asked whether he looked for a manufacturer's safety or warning label on the ladder, Mr. Baldwin stated that he did not. He further noted that due to his extensive experience in this field of endeavor, he usually did not look for such labels or markings; when he did look at the labels he only read them halfway.
Alleging the negligence and/or strict liability of the Kikas in providing him with a faulty ladder, Mr. and Mrs. Baldwin filed a personal injury suit against the Kikas and Allstate Insurance Company (Allstate), their homeowner's insurance provider. Allstate third-partied Sears based upon Mr. Kikas' allegation that he purchased the aluminum extension ladder from Sears some twenty (20) years earlier. Plaintiffs amended their petition to include Sears as a defendant alleging that Sears had either manufactured the defective ladder or sold it declaring it to be a Sears product and failed to provide adequate warnings with regard to the safe use of the ladder. Sears, as a result, was negligent or strictly liable under the Louisiana Products Liability Act. Allstate later filed a supplemental and amended third-party demand against Griffith Ladder Company (Griffith), a Pennsylvania corporation, alleging that Griffith had manufactured the ladder and that Sears had manufactured or sold it.
Extensive discovery was sought with regard to whether the ladder was either sold or manufactured by Sears. Mr. Kikas, now deceased, testified in his deposition that he had purchased the aluminum extension ladder from Sears' Oakwood store some twenty-odd years earlier. According to his testimony, the ladder had no labels, warnings or markings on it when purchased. He further stated that he did not know whether Sears manufactured the ladder. Mr. Kikas produced no receipts or evidence that the ladder was purchased from Sears.
*1326 Engineers, experts and witnesses gave deposition testimony regarding the possible manufacturer of the aluminum extension ladder, the types of ladders Sears sold between 1965 and 1970, and the types of warning labels Sears placed on their ladders at that time. After examining the characteristics of ladders from that time period, Richard Ver Halen, a professional engineer who had been involved in the study of Griffith products during the 1960's, concluded that the ladder was manufactured in July of 1965 by the Griffith Ladders Company. Earl Records, a mechanical engineer who worked for White Metal Rolling & Stamping Corp. (White Metal) from 1954 to 1991, producer of aluminum extension ladders for Sears, reviewed the evidence regarding the aluminum extension ladder in question. He concluded that the ladder was manufactured by Griffith and was not of the type purchased by Sears during the 1960's. Mr. Records also stated that White Metal Rolling & Stamping Corp. was the only provider of aluminum extension ladders to Sears during the relevant time period and that Sears did not purchase such ladders from Griffith.
James Goodpasture, a Sears employee for thirty-two (32) years,[1] was with the ladder department at the time the ladder was allegedly purchased from Sears. According to his testimony, the aluminum extension ladder purchased by Mr. Kikas and used by Mr. Baldwin was not the type sold by Sears. He further stated that Sears did not purchase aluminum extension ladders from Griffith. During the period in question, Sears purchased its aluminum extension ladders from White Metal. Mr. Goodpasture reviewed Sears' catalogues from the mid 1960's through 1970 and noted that the ladder in question was materially different from those shown in their catalogues. He further stated that Sears placed labels on all of their aluminum extension ladders sold at that time.
Karen Orseske, presently employed by Sears as a Data Processing Coordinator, testified that she went through the files in Sears' Division 30 of Contracts of Purchase to determine whether Sears had ever purchased an aluminum extension ladder from Griffith. According to her findings, Sears did not purchase aluminum extension ladders from the Griffith Ladders Company at any time during the 1960's.
Plaintiffs have settled with the Kikas and Allstate Insurance Company. However, they continue to pursue their claim against Sears under the Louisiana Products Liability Act (LPLA). The trial court, finding no genuine issues of material fact, granted Sears' motion for summary judgment.[2] In its reasons for judgment, the trial court concluded that the Louisiana Products Liability Act, § 9:2800.51, et seq., applied to this case and that the plaintiffs had "no evidence" that Sears was the manufacturer of the ladder as defined in § 9:2800.53(1).

DISCUSSION
Plaintiffs contend that genuine issues of material fact exist as to whether: (1) Sears sold the ladder in question; (2) Sears held itself out as a manufacturer within the meaning of the Louisiana Products Liability Act; and (3) Sears' failure to affix a proper warning label on the ladder was a cause-in-fact of Mr. Baldwin's accident.
Sears, on the other hand, submits that there are no genuine issues of material fact in dispute as to any one of the plaintiff's claims. The facts are undisputed in showing that Sears neither sold the ladder nor held itself out to be a manufacturer of the ladder. They further argue that because Mr. Baldwin did not look for a warning label before he used the ladder, plaintiff's argument that if he had seen a label he would not have used the ladder is futile at best.
La.Code Civ.Pro.Ann. art. 966 (West 1984) requires a court to grant summary judgment *1327 if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law." Furthermore, upon opposing a motion for summary judgment, the adverse party "may not rest on the mere allegations or denials of his pleading, but his response, by affidavits ... must set forth specific facts showing that there is a genuine issue for trial." La.Code Civ.Pro.Ann. art. 967 (West 1984).
The appropriate standard of review for summary judgments on appeal is de novo review. Hartford Accident & Indemnity Company v. Illinois Central Gulf Railroad Co., 598 So.2d 1107 (La.App. 4 Cir.), writ denied, 605 So.2d 1148 (La.1992). The party moving for summary judgment bears the burden of proving no genuine issues of material fact exist and that he is entitled to summary judgment as a matter of law. Transworld Drilling v. Texas General Resources, 604 So.2d 586, 589 (La.App. 4 Cir.), writs denied, 608 So.2d 174 (La.1992). In deciding whether a motion for summary judgment should be granted, "the court must first determine whether the supporting documents presented by the moving party are sufficient to resolve all material fact issues." Cooper v. Ceco Corporation, 558 So.2d 1355, 1358 (La.App. 4 Cir.1990). Furthermore, "[d]espite the presence of disputed facts, summary judgment as a matter of law will be granted if the disputed issues of fact are so patently insubstantial as to present no genuine issues." Id., at 1358.
In order for Sears to be held either negligent or strictly liable, it must be the seller or manufacturer of the aluminum extension ladder, as defined under the LPLA. The LPLA states in pertinent part:
(1) "Manufacturer" means a person or entity who is in the business of manufacturing a product for placement into trade or commerce. "Manufacturing a product" means producing, making, fabricating, constructing, designing, remanufacturing, reconditioning or refurbishing a product. "Manufacturer" also means:
(a) A person or entity who labels a product as his own or otherwise holds himself out to be the manufacturer of the product.
(b) A seller of a product who exercises control over or influences a characteristic of the design, construction or quality of the product that causes damage.
La.Rev.Stat.Ann. § 9:2800.53(1)(a), (b) (West 1991).
In support of their motion for summary judgment, Sears attached to its pleadings depositions, excerpts from Sears catalogues dating from 1965-1970, and experts' reports. The evidence is conclusive in establishing that Sears was not a seller or manufacturer within the meaning of § 9:2800.53(1). The sole individual who can testify that the ladder was purchased at Sears is Mr. Kikas, now deceased. All that he could testify to in his deposition was that he purchased the ladder from Sears. He had no sales receipts for the ladder and stated that there were no labels on it identifying the manufacturer or seller at the time of its purchase. Mr. Kikas could not and did not testify that Sears produced, made, fabricated, constructed, designed, remanufactured, reconditioned, refurbished, labelled, exercised control over or influenced the characteristic of the design, construction or quality of the aluminum extension ladder rendering Sears liable under the LPLA.
The two engineers involved in this case both testified that the ladder was produced by the Griffith Ladders Company in or about 1965. Mr. Goodpasture revealed that Sears did not purchase aluminum extension ladders from Griffith but from White Metal. And, unlike the ladder in question, Sears required that all of the ladders it sold have a warning label affixed to it. Mrs. Orseske, the individual who reviewed all of Sears Contracts of Purchase from the 1960's, stated in her deposition that Sears never purchased aluminum extension ladders from Griffith Ladders Company.
Plaintiffs' own ladder expert, Fred H. Vanderbrook, admitted that he had no information *1328 or facts to contradict the statement of Sears' ladder expert, Richard Ver Halen, that Griffith Ladder Company manufactured the ladder and that Griffith did not sell aluminum extension ladders to Sears. After comparing the ladder involved in Mr. Baldwin's accident to ladders from Sears catalogue for the relevant time period in the 1960s, Mr. Vanderbrook was unable to establish that Sears had sold the ladder that plaintiff had used.
Since no genuine issues of material fact exist as to whether Sears was, or held itself out to be, the manufacturer or seller of the aluminum extension ladder, it is entitled to summary judgment as a matter of law. Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] Between 1965 and 1978, Mr. Goodpasture was a buyer for Sears' ladder department.
[2] In their memorandum in opposition to Sears' motion for summary judgment, plaintiffs admitted that the ladder was not defective in design, composition or manufacture, thereby entitling Sears to a partial summary judgment.