Jerome **WALKER**

v.

**GENERAL MOTORS CORPORATION**

**No. CIV.A. 03–3204.**

United States District Court,
E.D. Louisiana.

Sept. 7, 2004.

Kimuel W. Lee, Law Office of Kimuel Lee, Baton Rouge, LA, for Jerome Walker, plaintiff.

Carl Joseph Giffin, Jr., Margaret A. Cassisa, Bernard, Cassisa, Elliott & Davis, Metairie, LA, for General Motors Corporation, defendant.

### ORDER AND REASONS

LEMMON, District Judge.

**IT IS HEREBY ORDERED** that General Motors Corporation's motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, is **GRANTED.** (Document # 42.)

### I. BACKGROUND

On November 1, 2002, Jerome Walker pulled his 2001 GMC Sierra 1500 truck into a residential driveway to speak to the homeowner. Without turning off the engine or engaging the parking brake, Walker released his two-year old grandson from his carseat and permitted the unattended child to play and pretend to drive the truck while Walker conducted his business. The child was able to pull the shift lever out of the "park" position, causing the truck to roll backwards down the inclined driveway. Walker ran after the truck to stop it, and the wheels of the truck ran over and injured Walker's left foot and ankle.

 Walker filed a petition for damages in the 22nd Judicial district Court for the Parish of Washington, State of Louisiana, against General Motors Corporation, asserting claims under the Louisiana Products Liability Act, La.Rev.Stat. 9:2800.51 et seq, (LPLA) and redhibition, La. Civ. Code art. 2520 et seq.[1] Walker alleges that a defective shifter switch on the shift lever enabled his two-year-old grandson to put the car in gear without stepping on the brake pedal. General Motors removed the case to federal court, and filed a motion for summary judgment.

### II. DISCUSSION

#### A. Legal standard

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." *Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 809 (5th Cir.1991); Fed.R.Civ.P. 56(c). If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence

---

1. In the petition, Walker also alleged claims of negligence and breach of contract. However, the pretrial order identifies only claims under the LPLA and redhibition. "[N]either negligence, strict liability, nor breach of express warranty is any longer viable as an independent theory of recovery against a manufacturer." *Jefferson v. Lead Industries Assoc., Inc.,* 106 F.3d 1245, 1251 (5th Cir.

1997). "[R]edhibition is not available as a theory of recovery for personal injury, although a redhibition action is still viable against the manufacturer to recover pecuniary loss." *Id.* The plaintiff may recover the value of the product or other economic loss. *Pipitone v. Biomatrix, Inc.,* 288 F.3d 239, 251 (5th Cir.2002).

of a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The nonmovant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc). A fact is "material" if its resolution in favor of one party might affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. *Saunders v. Michelin Tire Corp.,* 942 F.2d 299, 301 (5th Cir.1991).

## B. Products liability claim

■ General Motors contends that Walker has not specified any of the theories of defect under the LPLA, but identified a "functional defect," which is not recognized under the LPLA. As to the functional defect, General Motors contends that Walker's expert made no measurements, did no research or testing, and made no calculations to support his theory. Further, General Motors argues that Walker has not provided evidence of an expert on any of the exclusive theories of defect, the preparation of an alternative design, or a review of specifications or performance standards to determine whether the truck was unreasonably dangerous in construction or composition. General Motors argues that Walker's actions were significant in causing the accident.

The LPLA "establishes the exclusive theories of liability for manufacturers for damages caused by their products." La. Rev.Stat. 9:2800.52. The plaintiff must prove the following elements in a products liability cause of action under the LPLA:

1. that the defendant is a manufacturer of the product;

2. that the claimant's damage was proximately caused by a characteristic of the product;

3. that the characteristic made the product unreasonably dangerous in one of the four ways provided in the statute; and

4. that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else.

*Jefferson v. Lead Industries Ass'n, Inc.,* 106 F.3d 1245, 1251 (5th Cir.1997) (citing generally J. Kennedy, *A Primer on the Louisiana Products Liability Act,* 49 La. L.Rev. 565 (1989)); La.Rev.Stat. 9:2800.54. "A reasonably anticipated use means a use or handling of a product that the product's manufacturer should reasonably expect of an ordinary person in the same or similar circumstances." *Matherne v. Poutrait–Morin/Zefal–Christophe, Todson, Inc.,* 868 So.2d 114, 119 (La.Ct.App.2003); La.Rev. Stat. 9:2800.53(7). A plaintiff may prove that a product was "unreasonably dangerous" only under one of four theories:

(1) The product is unreasonably dangerous in construction or composition as provided in R.S. 9:2800.55;

(2) The product is unreasonably dangerous in design as provided in R.S. 9:2800.56;

(3) The product is unreasonably dangerous because of inadequate warning as provided in R.S. 9:2800.57; or

(4) The product is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product as provided in R.S. 9:2800.58.

*Jefferson v. Lead Industries Ass'n, Inc.,* 106 F.3d at 1251 (citing 9:2800.54(B)(1–4)).

Walker's expert, Andrew J. McPhate, inspected Walker's truck and evaluated the performance of the transmission shift control. McPhate concluded in a written report that the truck had a functional defect and did not perform as designed and expected by the user, stating:

The defect does create a hazard in that the vehicle exhibits behavior not expected by the user. If the user is aware of this particular behavior, the hazard can be managed by testing the shift lever position and by using the parking brake. Testing of the shift lever position by trying to pull the lever into "R" from "P" would take training and could easily be a forgotten step. Application of the parking brake is an extra step seldom taken by drivers in level terrain.

The behavior of the shifter suggests there may be a minor maladjustment in the linkage between the steering column shift lever and the transmission proper. The maintenance history presented to me indicates this defective condition would have existed when the truck was received from the GMC dealer.

General Motors presents the deposition of McPhate to explain and elaborate on his written opinion and to support its position that there is no evidence of an unreasonably dangerous product.[2] Defendant's exh. A. McPhate was asked by Walker to act as a mechanical engineer to look at the functional aspects. *Id.* at 46–47. McPhate drove the truck up an incline and "played with it with a view to see if it would actually do what they said." *Id.* at 27. In order to change the shift lever from "park," one must step on the brake and pull the shift lever towards the driver "to get it across the detent that's on the steering column." *Id.* at 28. "You can hear the solenoid pull the latch out that will allow the shift lever to move." *Id.* "[A]s soon as you lift the shift lever, the light immediately goes out. The way that particular electrics there are set up so that if you ... lift the shift lever to pull it up out of the detent, even without your foot on the brake, the light will go out but the latch is still holding it." *Id.* at 29. McPhate stated that "the concept of having to have a double motion, a lift from behind, a detent and then going-as well as step on the brake is pretty much the standard." *Id.* at 45. "All of the American pickup trucks are going ... to have the PRNDL arrangement and they're going to require that you step on the brake to get it out of park and into reverse. They're going to require that you put it into park before you pull the key from the ignition." *Id.* at 45–46.

McPhate explained that the incident as described in the complaint could occur in a situation in which the shift lever is not fully put into "park." *Id.* at 30. "What happens is that the parking pawl locks on the propeller shaft before the column shifter is far enough down in the detent for the brake latch to grab the column shift." *Id.* "Every once in a while, you remove your foot from the brake and the column lever is still on the edge, it has not dropped down into the detent and the [brake transmission shift interlock] ... has not engaged because the shift lever has not lined up with the latch." *Id.* at 31. In other words, the driver has not fully placed the vehicle in park. *Id.* McPhate stated that "there was nothing about this particular vehicle that I found that would have prevented him from making sure that it was all the way into park." *Id.* at 61.

<hr>

2. Walker moves to strike McPhate's deposition because it was taken beyond the discovery cutoff. *See* Plaintiff's opposition. The motion is denied. The court granted Walker's motion to extend the deadline to file an expert report, and the extension necessarily applies to the defendant's deadline for taking the expert's deposition.

McPhate opined that Walker "did not, as far as I can tell, did not shove, so to speak, slam or just shove the lever as far forward as he could and hit a solid stop.... Or, if he did, he bounced back. But at any rate, it was left on—shall we say on the ledge and the—the brake interlock did not latch and, you know, the child just pulled it down." *Id.* at 32. McPhate added that it was not something that would happen all of the time and that it took "an exquisite combination to get it to do that." *Id.* at 27.

McPhate testified that the incident could have been prevented if Walker had fully placed the transmission shift into the parked position, had set the parking brake, or had turned the key to the off position and removed it. *Id.* at 33. Further, McPhate stated that an automobile is not an "entertainment center for a two-year-old," and that the incident would not have occurred if Walker had not allowed it to happen. *Id.* at 36–37.

McPhate testified that there were no repairs to the shift interlock after the incident, Walker still drives the truck, and it has "never happened before or since." *Id.* at 43–44, 67. McPhate did not point to a safer, alternative design to determine if the truck was unreasonably dangerous.

Further, McPhate stated that he did not "think it's a design issue. It's just a matter of you're able to do this strictly because of small maladjustment, and that's all." *Id.* at 66–67.

McPhate explained the meaning of "functional defect" in his report as follows:

The functional defect is that it can hang and not be locked, okay? That's not intended. So that—it's a combination of things, and one of which may be simply some exquisite pressure angle considerations on the edge of the detent, that type of thing there, which sometimes happens, and because the designers didn't design it to hang like that. That's not intentional.

Now, ... the drivers have been conditioned that you have to put the brake on, then if it's hanging on a hill it's obviously in park. We don't have the parking brake set, the thing is obviously mechanically in park and so it just creates and expectation that somebody would have to step on the brake. That's all, and that all I've said.

*Id.* at 75–76. The owner's manual cautions in five or six different pages that it is dangerous to leave children in a vehicle with the ignition key, to leave the vehicle when the engine is running, and not to set the parking brake and move the shift lever fully to park. *See* Defendant's exh. C.[3]

---

**3.** Section 2–5 addresses "Keys":

CAUTION:
Leaving children in a vehicle with the ignition key is dangerous for many reasons. A child or others could be badly injured or even killed.
They could operate the power windows or other controls or even make the vehicle move. Don't leave the keys in a vehicle with children.
Section 2–24 concerns "Automatic Transmission Operation": CAUTION:
It is dangerous to get out of your vehicle if the shift lever is not fully in PARK (P) with the parking brake firmly set. Your vehicle can roll.

Don't leave your vehicle when the engine is running unless you have to. If you have left the engine running, the vehicle can move suddenly. You or others could be injured. To be sure your vehicle won't move, even when you're on fairly level ground, always set your parking brake and move the shift lever to PARK (P).
Section 2–44 cautions about getting out of the vehicle if the shift lever is not fully in PARK (P) with the parking brake firmly set and enumerates steps that must be used:
1. Hold the brake pedal down with your right foot and set the parking brake.
2. Move the shift lever into PARK (P) position [by pulling the shift lever toward you and moving the lever up as far as it will go].

Although McPhate did not review the owner's manual until the deposition, he agreed that the warnings were appropriate. *Id.* at 76.

Walker bears the burden of proving that the truck was unreasonably dangerous in construction, composition or design; that the warnings in the owner's manual concerning the operation of the vehicle and the danger of leaving children unattended was inadequate; or that the product did not conform to the manufacturer's express warranty. Walker cannot satisfy his summary judgment burden with conclusory allegations or only a scintilla of evidence, but must produce evidence of a genuine issue for trial. General Motors need only point out the absence of evidence to support the elements of Walker's case.

In his opposition to General Motors's motion for summary judgment, Walker has not put forth any summary judgment evidence to defeat the motion. Moreover, Walker has not put forth evidence that his injury arose from a use of the truck that the manufacturer should have reasonably expected of an ordinary person in similar circumstances. Walker left his grandchild

unattended in a car without engaging the parking brake, turning off the engine, or removing the key, all safety practices which are simple common sense. He did not read the owner's manual, which would have specifically cautioned him about these practices, as well as the proper way of safeguarding that the parking gear was properly engaged.

Because of the absence of evidence to support the elements of Walker's LPLA claim,[4] the court concludes that General Motors is entitled to judgment as a matter of law.

---

3. Be sure the transfer case is in a drive gear—not in NEUTRAL (N).
4. Turn the ignition key to LOCK.
5. Remove the key and take it with you. If you can leave your vehicle with the ignition key in your hand, your vehicle is in PARK (P).

Section 2–45 offers the following caution about "Leaving Your Vehicle With the Engine Running":

> It can be dangerous to leave your vehicle with the engine running. Your vehicle could move suddenly if the shift lever is not fully in PARK(P) with the parking brake firmly set.... And if you leave the vehicle with the engine running, it could overheat and even catch fire. You or others could be injured. Don't leave your vehicle with the engine running unless you have to.
>
> If you have to leave your vehicle with the engine running, be sure your vehicle is in PARK(P) and the parking brake is firmly set before you leave it. After you move the

shift lever into PARK (P), hold the regular brake pedal down. Then, see if you can move the shift lever away from PARK (P) without first pulling it toward you. If you can, it means that the shift lever wasn't fully locked into PARK (P).

Section 2–46 advises on "Shifting Out of PARK (P)":

> If your vehicle has an automatic transmission shift lock control system, you have to fully apply your regular brakes before you can shift from PARK (P) when the ignition is in RUN.

4. Because Walker has not put forth evidence to establish that the truck was unreasonably dangerous under the LPLA, he has not established a claim in redhibition. *See* Frank L. Maraist & Thomas C. Galligan, Jr., *Louisiana Tort Law* § 15–6 (1996) (Proof of a " 'vice' for redhibition recovery overlaps with proof of a defective product for tort purposes.")