# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 14-993

**VINCENT CHARLES BUNDRICK, ET AL.**

**VERSUS**

**ANADARKO PETROLEUM CORP., ET AL.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 70353
HONORABLE GERARD B. WATTIGNY, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## JIMMIE C. PETERS
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Jimmie C. Peters, Marc T. Amy, and Shannon J. Gremillion, Judges.

**AFFIRMED.**

**Donald T. Carmouche**
**Talbot, Carmouche & Marcello**
**17405 Perkins Road**
**Baton Rouge, LA 70810**
**(225) 400-9991**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    Vincent Charles Bundrick
    Cajun Pride, Inc.

**Paul M. Lavelle**
**Winstead PC**
**1100 Poydras Street, Suite 2900**
**New Orleans, LA 70163**
**(504) 799-2223**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Great Southern Oil & Gas Co., Inc.**

**Richard M. Simses**
**Winstead PC**
**24 Waterway Avenue, Suite 500**
**The Woodlands, TX 77380**
**(281) 681-5900**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Great Southern Oil & Gas Co., Inc.**

**Robert B. McNeal**
**Liskow & Lewis**
**701 Poydras Street, Suite 5000**
**New Orleans, LA 70139-5099**
**(504) 581-7979**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **ExxonMobile Pipeline Company**

**Karen T. Bordelon**
**Babineaux, Poche, Anthony, and Slavich, LLC**
**1201 Camelia Boulevard, Suite 300**
**Lafayette, LA 70508**
**(337) 984-2505**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Vernon E. Faulconer, Inc.**

**Michael R. Phillips**
**Claire E. Juneau**
**Kean Miller LLP**
**First Bank and Trust Tower**
**909 Poydras Street, Suite 3600**
**New Orleans, LA 70112**
**(504) 585-3050**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
     **Chevron USA, Inc.**
     **Four Star Oil and Gas Company**

**Richard D. McConnell, Jr.**
**Kean Miller LLP**
**400 Convention Street, Suite 700**
**P. O. Box 3513**
**Baton Rouge, LA 70821**
**(225) 387-0999**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
**Chevron USA, Inc.**
**Four Star Oil & Gas**

**Jonathan R. Cook**
**Wall, Bullington, & Cook LLC**
**540 Elmwood Park Boulevard**
**New Orleans, LA 70123**
**(504) 736-0347**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Anadarko Petroleum Corporation**

**Jessica T. Gachassin**
**Johnson Gray McNamara, LLC**
**P. O. Box 51165**
**Lafayette, LA 70505**
**(337) 412-6003**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Shell Oil Company**

**Christopher M. Rhymes**
**Liskow & Lewis**
**822 Harding Street**
**P.O. Box 52008**
**Lafayette, LA 70505**
**(337) 232-7424**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**BP America Production Company**

**PETERS, J.**

The plaintiffs in this property damage claim, Vincent Charles Bundrick and Cajun Pride, Inc., appeal the trial court's grant of summary judgments in favor of four of the defendants, Four Star Oil and Gas Company, Chevron U.S.A. Inc., Great Southern Oil & Gas Company, Inc., and BP America Production Company, dismissing their claims against these defendants. For the following reasons, we affirm the trial court judgment in all respects.

## DISCUSSION OF THE RECORD

The facts are not in dispute. Mr. Bundrick and Cajun Pride, Inc. (hereinafter collectively referred to as "the plaintiffs") own interests in seven tracts of immovable property located in St. Martin Parish, Louisiana. All seven tracts at issue have been the subject of oil and gas production in the past and are located in what is referred to as the Anse le Butte Field. On March 9, 2006, Mr. Bundrick and Cajun Pride filed a suit for damages against twelve named defendants,[1] asserting that past oil and gas activities conducted by the twelve defendants, or their predecessors in interest, under defunct oil, gas, and mineral leases caused the contamination of the seven tracts of immovable property. They further asserted that the twelve defendants were negligent and strictly liable for the damage caused and that their conduct created a continuing and damaging nuisance and a continuing trespass on their property. The plaintiffs further asserted that the contamination constituted a breach of the lessees' obligation under the Louisiana Mineral Code, to act prudently and to restore the leased property, as close as

---

[1] The twelve defendants named are Anadarko Petroleum Corporation; BP America Production Company; Chevron Pipe Line Company; CMC Energy Limited Partnership; ExxonMobil Pipeline Company; Four Star Oil and Gas Company; Great Southern Oil & Gas Company, Inc.; Placid Oil Company; Sandoz & Associates, Inc.; Texaco Refining and Marketing, Inc.; Gulf South Pipeline Company, L.P.; and Vernon E. Faulconer, Inc. In an amending and supplemental petition, Chevron U.S.A., Inc. was substituted as defendant in place of Chevron Pipe Line Company.

practicable, to its original condition at the earliest reasonable time, in addition to their contractual obligations to restore the property to its original condition. Although the plaintiffs asserted that any amount received as damages would be used expressly to remediate the property, they stated that no claims were being made pursuant to the Conservation Act, the Environmental Quality Act, federal laws, or the Groundwater Act.[2]

In addition to property damages and general damages for mental anguish, distress, annoyance, discomfort and inconvenience, diminution in property value, and stigma, the plaintiffs sought punitive damages pursuant to former La.Civ.Code art. 2315.3,[3] based on the twelve defendants' reckless storage, handling, or transportation of hazardous or toxic substances, and sought a permanent injunction against the twelve defendants; recovery of any civil fruits derived by them from their illegal trespass, pursuant to La.Civ.Code art. 486; and the cost of a comprehensive and expedited environmental assessment plan.

Despite the fact that the record before us is voluminous, only four of the twelve defendants are involved in this appeal: Four Star Oil and Gas Company, Chevron U.S.A., Inc., Great Southern Oil & Gas Company, Inc., and BP America Production Company (hereinafter referred collectively as "the defendants"). The trial court heard argument on the motions and granted judgment on April 23, 2014. The trial court then executed a written judgment corresponding to its oral reasons

---

[2] The Louisiana Conservation Act, La.R.S. 30:1 et seq.; The Louisiana Environmental Quality Act, La.R.S. 30:2001 et seq.; and the Groundwater Act, La.R.S. 30:2015.1.

[3] La.Civ.Code art. 2315.3 relating to the storage, handling, or transportation of hazardous or toxic substances was repealed by 1996 La. Acts, 1st Ex.Sess., No. 2, § 1, effective April 16, 1996.

for judgment on May 13, 2014,[4] and, thereafter, the plaintiffs perfected this appeal.

In their appeal, the plaintiffs assert twelve assignments of error:

1.      The trial court committed error in dismissing the claims of Bundrick based on the subsequent purchaser rule.

2.      The trial court committed error in treating all of the claims asserted by Bundrick as personal claims for damages.

3.      The trial court committed error in failing to find that Bundrick owns a real right to claim restoration of his property.

4.      The trial court committed error in failing to find that Bundrick has the right to seek remediation as a successor to the prior owners of mineral rights on the property.

5.      The trial court committed error in failing to find that Bundrick has remediation claims based on Article 11 of the Mineral Code.

6.      The trial court committed error in its interpretation of *Eagle Pipe*.[5]

7.      The trial court committed error in failing to find that defendants owe real remediation obligations to Bundrick.

8.      The trial court committed error in failing to find that the Mineral Code provisions applying to mineral leases impose real obligations on mineral lessees that are owed to surface owners.

9.      The trial court committed error in failing to treat the mineral leases as limited personal servitudes.

10.     The trial court committed error by ignoring footnote 80 of *Eagle Pipe*.

11.     The trial court committed error in failing to find the expiration of the mineral leases did not deprive Bundrick of a right of action.

---

[4] Although Bundrick, Four Star Oil and Gas Co., and Chevron U.S.A., Inc. stipulated at the start of the hearing that Chevron U.S.A., Inc. was the proper party in interest and the trial court granted their request to dismiss Four Star Oil and Gas Co. from the suit, the judgment does not indicate its dismissal.  Moreover, Bundrick's appeal does not recognize that the dismissal occurred.

[5] This assignment and the remaining assignments of error are misidentified as numbers seven through thirteen in Bundrick's appellate brief.

3

12.   The trial court committed error in failing to find that Bundrick has a right of action under Article 11 of the Mineral Code.

## OPINION

It is well settled that "[a]ppellate review of the granting of a motion for summary judgment is *de novo*, using the identical criteria that govern the trial court's consideration of whether summary judgment is appropriate." *Smitko v. Gulf S. Shrimp, Inc.*, 11-2566, p. 7 (La. 7/2/12), 94 So.3d 750, 755. Summary judgment proceedings are "favored" and "designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969." La.Code Civ.P. art. 966(A)(2). Additionally, "[a]fter adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted." La.Code Civ.P. art. 966(C)(1).

When the summary judgment hearing began, the parties stipulated that the plaintiffs acquired the immovable property after the expiration of the mineral leases at issue and that they did so without obtaining an assignment of their predecessor-in-interest's rights to proceed against the responsible parties for contamination to the land. Without a genuine issue of material fact, the only issue before the trial court was whether the defendants were entitled to judgment as a matter of law. In granting the defendants summary judgment relief and dismissing them from the litigation, the trial court found that the subsequent purchaser rule precluded any right of action by the plaintiffs against the defendants.

The supreme court performed an extensive analysis of the subsequent purchaser rule in *Eagle Pipe and Supply, Inc. v. Amerada Hess Corp.*, 10-2267, 10-2272, 10-2275, 10-2279, 10-2289 (La. 10/25/11), 79 So.3d 246, a case dealing with surface leases and relied on by the trial court in the case before us. The

4

supreme court described the subsequent purchaser rule as:

> [A] jurisprudential rule which holds that an owner of property has no right or actual interest in recovering from a third party for damage which was inflicted on the property before his purchase, in the absence of an assignment or subrogation of the rights belonging to the owner of the property when the damage was inflicted.

*Id.* at 256-57.

The supreme court then performed an exhaustive review of the law pertaining to property rights and obligations as they apply to the subsequent purchaser rule, and reviewed the jurisprudence on the subject. In doing so, the supreme court concluded that damage to property results in damage to a property owner's right of enjoyment in the property, which is a right of ownership and, thus, a real right in the property. Therefore, the tortfeasor owes an obligation to the owner of the property and that obligation affords the owner a right to demand a performance from the tortfeasor, that of the payment of damages. The supreme court further concluded, however, that the right to sue is a personal right and, thus, is only enforceable by the property owner against the tortfeasor. Should the property pass to a subsequent owner, that owner has no right to sue the tortfeasor for the previously inflicted damage absent an assignment or subrogation of the prior owner's personal right to sue for that damage.

Despite reaching this conclusion, the supreme court noted that the *Eagle Pipe* dispute dealt specifically with surface leases and stated that it "express[ed] no opinion as to the applicability of our holding to fact situations involving mineral leases or obligations arising out of the Mineral Code." *Id.* at 281, n.80.

This reference to the Louisiana Mineral Code is obviously a reference to La.R.S. 31:16, which provides:

> The basic mineral rights that may be created by a landowner are the mineral servitude, the mineral royalty, and the mineral lease. This

5

enumeration does not exclude the creation of other mineral rights by a landowner. Mineral rights are real rights and are subject either to the prescription of nonuse for ten years or to special rights of law governing the term of their existence.[6]

In *Frank C. Minvielle, L.L.C. v. IMC Global Operations, Inc.*, 380 F.Supp.2d 755, 774-775 (W.D. La.2004), the federal district court reviewed the jurisprudence and the Mineral Code and categorized a mineral right as being "a limited personal servitude," which creates real rights in favor of the mineral lessee that protects the lessee's rights to the same extent as that of the property owner, which are protected against the world. However, the court pointed out that while the right of the mineral lessee is akin to a real right, the right of the mineral lessor is personal. Thus, the court concluded, a subsequent purchaser has no standing to raise the prior owner's cause of action against the mineral lessee absent "some form of privity of contract, assignment of rights, or [as] the beneficiary of a stipulation pour autri." *Id.* at 776.

In the recent case of *Duck v. Hunt Oil Co.*, 13-628 (La.App. 3 Cir. 3/5/14), 134 So.3d 114, *writs denied*, 14-703, 14-709, 14-715, 14-735 (La. 6/13/14), 140 So.3d 1189, 1190, a panel of this court specifically addressed whether a subsequent land owner has a right of action for damages to his property caused by contamination from prior mineral leases. In granting the various mineral-lessee defendants' exceptions of no right of action and motion for summary judgment, the trial court had applied the subsequent purchaser rule pursuant to *Eagle Pipe*. This court reversed the trial court judgment and remanded the matter to the trial court

---

[6] The Comment to La.R.S. 31:16 expands on the language of the statute by explaining that "[i]t is true that there are certain distinctions from the normal real right which give the mineral lease markings of kinship to personal rights. . . However, these distinguishing marks are susceptible of recognition and are dealt with appropriately in the articles of this code governing mineral leases. The basic purpose of this article is to recognize that insofar as the mineral lease transfers both operating rights and rights of production it is a real right and not a mere personal contract."

for further proceedings, finding privity of contract between the parties based on a stipulation pour autrui created by the mineral lease. In addressing the supreme court's opinion in *Eagle Pipe*, this court stated:

> The lease at issue in *Eagle Pipe* was a surface lease whereas the leases at issue in the matter before us are mineral leases. By its own terms, *Eagle Pipe* does not apply to situations involving mineral leases. Thus, the trial court erred in applying the subsequent purchaser theory recognized in *Eagle Pipe* to bar the claims that Duck asserts in this matter as those claims arise under mineral leases.

*Id.* at 119.

However, in the recent case of *Global Marketing Solutions, LLC v. Blue Mill Farms, Inc.*, 13-2132 (La.App. 1 Cir. 9/9/14), 153 So.3d 1209, the first circuit reached an opposite result. In that case, a subsequent landowner sought damages for contamination to its property arising from oil and gas activities conducted by previous mineral lessees, and the trial court denied the mineral lessees' motion for summary judgment and exceptions of no right of action. The trial court's judgment was based on the first circuit's holding in *Marin v. Exxon Mobil Corp.*, 08-1724 (La.App. 1 Cir. 9/30/09) (unpublished opinion),[7] wherein the trial court concluded that "the right to recover damages is a property right arising out of the original lease and attaches to the property itself." *Global Mktg.*, 153 So.3d at 1212. Initially, the mineral-lessee defendants sought supervisory writs from the first circuit and the first circuit rejected their request for relief. *Global Mktg. Solutions, LLC v. Blue Mill Farms, Inc.*, 10-787 (La.App. 1 Cir.) (unpublished writ). Thereafter, the supreme court granted supervisory writs to the mineral-lessee defendants and remanded the case to the trial court with instructions to

---

[7] *Marin* was subsequently reversed, in part, by the supreme court, which recounted the appellate court's holding that a property owner, "as a subsequent purchaser of property . . . had a right to recover damages from Exxon arising in breach of contract and tort because the right to recover damages was a 'property right,' and not a personal right." *Marin v. Exxon Mobil Corp.*, 09-2368, 09-2371, p. 10 (La. 10/19/10), 48 So.3d 234, 244.

reconsider "its rulings in light of *Eagle Pipe and Supply, Inc. v. Amerada Hess Corporation*, 10-2267, 10-2272, 10-2275, 10-2279, 10-2289 (La.10/25/11), 79 So.3d 246." *Global Mktg. Solutions, L.L.C. v. Blue Mill Farms, Inc.*, 10-1912, 10-1914, 10-1922, 10-1924, 10-1931 (La. 3/2/12), 84 So.3d 538, 539, 540.

Upon remand, the trial court granted summary judgment in favor of the mineral-lessee defendants and dismissed the plaintiff's claims with prejudice. *Global Mktg.*, 153 So.3d 1209. The matter then returned to the first circuit on appeal, and in interpreting *Eagle Pipe*, the first circuit stated:

> We find no ambiguity in the supreme court's language, which states that an owner's right to sue for damage to his property is a personal right and is held by the person who was the owner at the time the damage was caused. This personal right is not transferred to a subsequent owner without a clear stipulation that the right has been transferred. We find the district court reached the same conclusion as we have in its interpretation of *Eagle Pipe*, and we find no error in its application.

*Id.* at 1215.

We agree with the first circuit that the supreme court's instruction to the trial court in *Global Marketing* is a recognition that the subsequent purchaser rule applies in matters involving mineral leases. *See Boone v. Conoco Phillips Co.*, 13-1196 (La.App. 3 Cir. 5/7/14), 139 So.3d 1047. Accordingly, we find no merit in Bundrick's first, sixth, and tenth assignments of error.

In its remaining assignments of error, Bundrick basically argues that it has a cause of action for the remediation of its contaminated property pursuant to Article 11 of the Louisiana Mineral Code, because mineral rights are real rights and, as such, pass with the property to a subsequent purchaser without the need for specific assignment or subrogation. We find no merit in this argument.

As previously held, despite the language of La.R.S. 31:16 stating that mineral rights are real rights, that status is reserved to the mineral lessee and not

8

the mineral lessor.

Louisiana Revised Statutes 31:11(A) provides that:

> The owner of land burdened by a mineral right or rights and the owner of a mineral right must exercise their respective rights with reasonable regard for those of the other. Similarly the owners of separate mineral rights in the same land must exercise their respective rights with reasonable regard for the rights of other owners.

Those rights consist of both parties acting in good faith; the mineral lessor delivering the property and doing nothing to disrupt the mineral lessees' actions pursuant to the mineral lease; and the mineral lessee acting as a reasonably prudent operator in furthering his plans under the lease. Although the Mineral Code focuses on transactions involving the lessee's interest, it is generally silent with regard to transactions involving the lessor's interest. However, it does state, "To the extent of the interest acquired, an assignee or sublessee acquires the rights and powers of the lessee and becomes responsible directly to the original lessor for performance of the lessee's obligations." La.R.S. 31:128. There is no corresponding statute pertaining to a subsequent owner's obligations towards the lessee, original or otherwise.

In *Global Marketing*, 153 So.3d at 1216, the first circuit, in addressing a similar argument, stated:

> Despite Global's interpretation of La. C.C. art. 667[8] and La. Mineral Code arts. 11 and 134,[9] which contains no statutory or jurisprudential support, *Eagle Pipe* clearly states that leases convey personal rights only, and we can find nothing in the Mineral Code or the Civil Code which make mineral leases an exception to that rule. Global, therefore, has no real right to sue the defendants for the damage to the land. No such right transferred to Global upon its purchase of the property, and no such right was assigned to Global by any party at any time.

---

[8] La.Civ.Code art. 667 pertains to the limitations that a proprietor, in regards to his neighbor, may do on his property.

[9] La.R.S. 31:134 provides, "If a mineral lease is violated, an aggrieved party is entitled to any appropriate relief provided by law."

9

In specifically addressing La.R.S. 31:11 and La.R.S. 31:134, the first circuit stated, "these articles contemplate the real rights and obligations that exist between parties who occupy the land contemporaneously with a mineral lease." *Id.*

Accordingly, we find no merit in Bundrick's remaining assignments of error.

## DISPOSITION

For the foregoing reasons, we affirm the trial court's grant of summary judgment in all respects. We assess all costs of this appeal to Vincent Charles Bundrick and Cajun Pride, Inc.

**AFFIRMED.**