# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-30971

United States Court of Appeals
Fifth Circuit

**FILED**
April 18, 2017

Lyle W. Cayce
Clerk

KENNETH JAMES GUILBEAU,

> Plaintiff–Appellant,

v.

HESS CORPORATION,

> Defendant–Appellee.

Appeal from the United States District Court
for the Western District of Louisiana

Before REAVLEY, OWEN, and SOUTHWICK, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Hess Corporation's predecessors obtained several mineral leases and conducted oil and gas operations on property for many years, ceasing operations in 1971, and the oil and gas leases expired in 1973. In 2007, Kenneth Guilbeau purchased property on which these operations had been conducted. At that time, all wells had been plugged and abandoned. The sale did not include any assignment of rights to sue for pre-purchase damages. Guilbeau then brought suit against Hess, asserting claims for damages stemming from contamination caused by the oil- and gas-related activities on the tract. Hess moved for summary judgment, arguing that Louisiana law bars Guilbeau's claims for damages occurring prior to Guilbeau's purchase of the

No. 16-30971

property. The district court granted Hess's motion, concluding that the subsequent purchaser rule barred Guilbeau's claims. Guilbeau appealed. We affirm.

## I

"We review a grant of summary judgment de novo, applying the same standard that the district court applied."[1] In this diversity action, Louisiana law controls.[2] Federal courts applying state law "look to the final decisions of that state's highest court."[3] When, as here, the state's highest court has not decided an issue, this court must make an "*Erie* guess" as to how the state supreme court would decide the issue.[4] In doing so, this court should "defer to intermediate state appellate court decisions, unless convinced by other persuasive data that the highest court of the state would decide otherwise."[5]

## A

In its recent decision in *Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*, the Louisiana Supreme Court undertook a comprehensive review of the legal principles undergirding the subsequent purchaser rule as well as the rule's development in Louisiana case law.[6] The court stated:

---

[1] *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 417 (5th Cir. 2016).

[2] *See Hanna v. Plumer*, 380 U.S. 460, 465 (1965).

[3] *Temple v. McCall*, 720 F.3d 301, 307 (5th Cir. 2013) (quoting *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010)).

[4] *Id.* (quoting *Six Flags, Inc. v. Westchester Surplus Lines Ins. Co.*, 565 F.3d 948, 954 (5th Cir. 2009)). This court looks to various sources of law in making an *Erie* guess, including "(1) decisions of the [Louisiana] Supreme Court in analogous cases, (2) the rationales and analyses underlying [Louisiana] Supreme Court decisions on related issues, (3) dicta by the [Louisiana] Supreme Court, (4) lower state court decisions, (5) the general rule on the question, (6) the rulings of courts of other states to which [Louisiana] courts look when formulating substantive law and (7) other available sources, such as treatises and legal commentaries." *Gulf & Miss. River Transp. Co. v. BP Oil Pipeline Co.*, 730 F.3d 484, 488-89 (5th Cir. 2013) (alterations in original) (quoting *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel, L.L.C.*, 620 F.3d 558, 564 (5th Cir. 2010)).

[5] *Temple*, 720 F.3d at 307 (quoting *Mem'l Hermann Healthcare Sys., Inc. v. Eurocopter Deutschland, GMBH*, 524 F.3d 676, 678 (5th Cir. 2008)).

[6] 79 So. 3d 246, 256-75 (La. 2011).

The subsequent purchaser rule is a jurisprudential rule which holds that an owner of property has no right or actual interest in recovering from a third party for damage which was inflicted on the property before his purchase, in the absence of an assignment or subrogation of the rights belonging to the owner of the property when the damage was inflicted.[7]

We see no need to repeat the entirety of the court's thorough analysis of the doctrine here. However, we note its explanation that:

> injury to property must be understood as damage to the real rights in the property. A tortfeasor who causes injury or damage to a real right in property owes an obligation to the owner of the real right. This relationship arises as a matter of law and provides to the owner of the real right a personal right to sue the tortfeasor for damages.[8]

The court clarified that damage to property creates a *personal* right to sue, which unlike a real right, does not transfer to a subsequent purchaser "[i]n the absence of an assignment or subrogation."[9] The court concluded that a current property owner has no right to recover from a third party for property damages caused prior to his purchase.[10] Though *Eagle Pipe* provided extensive guidance on the purposes and principles underlying the subsequent purchaser rule, it also noted in a footnote that "because not factually relevant [to the case at issue], we express no opinion as to the applicability of our holding to fact situations involving mineral leases or obligations arising out of the Mineral Code."[11] Guilbeau claims that this footnote has created uncertainty about the applicability of the subsequent purchaser rule to mineral leases and has

---

[7] *Id.* at 256-57.

[8] *Id.* at 279.

[9] *Id.* at 262, 279.

[10] *Id.* at 279; *see also id.* at 279-83 (rejecting, in addition, claims based on the continuing tort doctrine, civil trespass, and contract and noting that there were no ongoing acts causing damage and that the plaintiff was neither a party to nor a third-party beneficiary of the lease).

[11] *Id.* at 281 n.80.

No. 16-30971

resulted in a "mishmash of appellate jurisprudence."  We disagree.  Guilbeau is correct that some earlier appellate decisions determined the rule was inapplicable to mineral leases.[12]  However, a clear consensus has emerged among all Louisiana appellate courts that have considered the issue, and they have held that the subsequent purchaser rule does apply to cases, like this one, involving expired mineral leases.

## B

The Louisiana First Circuit Court of Appeal considered the applicability of *Eagle Pipe* to expired mineral leases in *Global Marketing Solutions, L.L.C. v. Blue Mill Farms, Inc.*[13]  The purchaser in that case learned after it purchased the surface rights without an assignment of personal rights that prior drilling operations had contaminated the land.[14]  Applying the reasoning of *Eagle Pipe*, the court held that the right to sue for damage to the property was a personal right held by prior owners at the time the defendants caused the damage and did not transfer to the purchaser without a specific assignment.[15]

The court also rejected claims based on the rights and obligations "between owners of adjacent immovable property" and the Mineral Code's "correlative rights" doctrine, whereby a landowner and the mineral rights owner are required to exercise their rights with reasonable regard for each

---

[12] *See Marin v. Exxon Mobil Corp.*, No. 2008 CA 1724, 2009 WL 7004332, at \*\*12-14 (La. Ct. App. Sept. 30, 2009) (declining to apply the subsequent purchaser rule), *aff'd in part and rev'd in part*, 48 So. 3d 234, 239, 262 (La. 2010) (dismissing all claims by plaintiffs who did not have current leases, but determining that some plaintiffs were entitled to damages for breach of current leases); *Duck v. Hunt Oil Co.,* 134 So. 3d 114, 119, 122 (La. Ct. App. 2014) (declining, based on the *Eagle Pipe* footnote, to apply the subsequent purchaser rule to a mineral lease, but remanding on other grounds).

[13] 153 So. 3d 1209 (La. Ct. App. 2014).  The Supreme Court of Louisiana had previously remanded the case to the trial court specifically to reconsider "its rulings in light of *Eagle Pipe*." *Glob. Mktg. Sols., L.L.C. v. Blue Mill Farms, Inc.*, 84 So. 3d 540, 540 (La. 2012).

[14] *Id.* at 1211, 1215.

[15] *Id.* at 1214-15.

other.[16] Because the leases had expired prior to purchase, the parties had never been either "neighbors" or contemporaneous owners.[17] The court concluded they had no reciprocal rights or obligations under either theory.[18]

The Second Circuit Court of Appeal has consistently applied the subsequent purchaser rule to mineral leases.[19] Most recently, in *Walton v. Exxon Mobil Corp.*,[20] that court held that the subsequent purchaser doctrine precluded claims for damages arising prior to the date on which the surface owners acquired the land, even though the leases were still in effect at the time of the acquisition.[21] Though the purchasers could assert claims for damages caused *after* their acquisition of the property, the court held that any claims for pre-purchase damages "were the personal rights and claims of the former surface owners."[22]

The Third Circuit Court of Appeal, which previously suggested that it would not apply the subsequent purchaser doctrine to mineral leases,[23] now agrees with the other appellate courts.[24] In *Boone v. Conoco Phillips Co.*,[25] it

---

[16] *Id.* at 1215.

[17] *Id.*

[18] *Id.*

[19] *See Wagoner v. Chevron USA Inc.*, 55 So. 3d 12, 23 (La. Ct. App. 2010) *on reh'g* (Nov. 24, 2010) (determining, pre-*Eagle Pipe*, that "[t]he right to damages conferred by a lease, whether arising under a mineral lease or a predial lease, is a personal right, not a property right; and, as a personal right, it does not pass to the new owners of the land when there is no specific conveyance of that right in the instrument of sale").

[20] 162 So. 3d 490 (La. Ct. App. 2015).

[21] *Id.* at 495, 498-99.

[22] *Id.* at 498.

[23] *Duck v. Hunt Oil Co.,* 134 So. 3d 114, 119, 122 (La. Ct. App. 2014) (stating that "[b]y its own terms, *Eagle Pipe* does not apply to situations involving mineral leases," but remanding the case because the lease contained a third-party beneficiary provision on which plaintiff's might base a claim).

[24] *See Bundrick v. Anadarko Petrol. Corp.*, 159 So. 3d 1137, 1143 (La. Ct. App. 2015) (noting the Louisiana Supreme Court's instruction in *Global Marketing Solutions, L.L.C. v. Blue Mill Farms, Inc.*, 84 So. 3d 540 (La. 2012) that the trial court reconsider a prior decision in light of *Eagle Pipe* and interpreting that instruction as "recognition that the subsequent purchaser rule applies in matters involving mineral leases").

[25] 139 So. 3d 1047 (La. Ct. App. 2014).

addressed whether the subsequent purchaser doctrine applied to bar tort and contract claims by landowners against a prior mineral rights lessee for pre-purchase land damage.[26] The court noted that under the reasoning of *Eagle Pipe*, a "former owner retains the right to recover the damages caused by the former owner's lessee during the former owner's ownership of the property."[27] It held that, though a purchaser may have a cause of action in redhibition against the seller, the new owner "does not have a right of action against the seller's lessee" without a valid assignment.[28]

Finally, in *Bundrick v. Anadarko Petroleum Corp.*, the same court applied the subsequent purchaser doctrine to a mineral lease under facts similar to those in this case: the parties agreed that the plaintiffs acquired the property after the expiration of the mineral leases without obtaining a specific assignment of the prior owner's rights of action.[29] The plaintiff-purchasers asserted that the defendant's activities under various expired mineral leases had contaminated the property in violation of the lessee's obligations under the Mineral Code.[30] The court explicitly acknowledged "that the subsequent purchaser rule applies in matters involving mineral leases."[31]

The court also squarely addressed and rejected the argument that the purchaser had a cause of action in remediation based purely on the fact that mineral rights are categorized as real rights under Louisiana's Mineral Code.[32] It concluded that while mineral rights in the lessee are real rights, a lessor's

---

[26] *Id.* at 1050-51.

[27] *Id.* at 1053.

[28] *Id.* at 1053-54; *id.* at 1055-56 (considering and rejecting plaintiff-purchaser's assertion that he had obtained assignment of the right to sue after the sale, finding the assignments did not provide the party with a right of action in either contract or tort).

[29] 159 So. 3d at 1138, 1140.

[30] *Id.* at 1139.

[31] *Id.* at 1143.

[32] *Id.* at 1143-44.

rights, including the right to sue for damages, are personal and do not automatically transfer with the property.[33]

## II

The above cases demonstrate a consensus supporting the application of the subsequent purchaser doctrine to cases involving mineral leases. Because this case presents no occasion to depart from the above-described precedent, we "defer to [these] intermediate state appellate court decisions"[34] and hold that the subsequent purchaser doctrine bars Guilbeau's claims.

We also note that although the denial of a writ is not necessarily an approval of the appellate court's decision nor precedential,[35] the Louisiana Supreme Court has had multiple opportunities to consider this issue and has repeatedly declined to do so.[36] Guilbeau engages in extensive analysis of Louisiana's Civil and Mineral Codes but fails to present "persuasive data that the highest court of the state would decide [this case] otherwise."[37]

Finally, as this court has previously explained, "[a]lone, the absence of a definitive answer from the state supreme court on a particular question is not sufficient to warrant certification."[38] "Rather, we must 'decide the case as would an intermediate appellate court of the state in question if . . . the highest court of the state has not spoken on the issue or issues presented,'"[39] and we

---

[33] *Id.*

[34] *Temple v. McCall*, 720 F.3d 301, 307 (5th Cir. 2013) (quoting *Mem'l Hermann Healthcare Sys., Inc. v. Eurocopter Deutschland, GMBH*, 524 F.3d 676, 678 (5th Cir. 2008)).

[35] *White v. La. W. Ry. Co.*, 140 So. 486, 488 (La. 1932); *see also Ehrlicher v. State Farm Ins. Co.*, 171 F.3d 212, 214 n.1 (5th Cir. 1999) (stating that a denial of writ does not create precedent or constitute approval of the decision for which the writ is sought).

[36] *Walton v. Exxon Mobil Corp.*, 184 So. 3d 25 (La. 2015) (denying writ); *Bundrick v. Anadarko Petrol. Corp.*, 184 So. 3d 24 (La. 2015) (denying writ); *Glob. Mktg. Sols., L.L.C. v. Blue Mill Farms, Inc.*, 173 So. 3d 1164 (La. 2015) (denying writ); *LeJeune Bros. v. Goodrich Petrol. Co.*, 978 So. 2d 327 (La. 2008) (denying writ).

[37] *See Temple*, 720 F.3d at 307 (quoting *Mem'l Hermann*, 524 F.3d at 678).

[38] *Jefferson v. Lead Indus. Ass'n*, 106 F.3d 1245, 1247 (5th Cir. 1997) (per curiam).

[39] *Id.* (alteration in original) (quoting *Transcon. Gas Pipeline Corp. v. Transp. Ins. Co.*, 958 F.2d 622, 623 (5th Cir. 1992) (per curiam)).

No. 16-30971

are "reluctant" to certify "absent genuinely unsettled matters of state law."[40] When, as here, the appellate decisions are in accord, the law is not unsettled, and certification is unwarranted.

* * *

For the foregoing reasons, we AFFIRM the judgment of the district court dismissing the case.

---

[40] *Id.*