# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 19-60001

United States Court of Appeals
Fifth Circuit

**FILED**
September 27, 2019

Lyle W. Cayce
Clerk

MAXWELL SIMMONS,

Plaintiff - Appellant

v.

PACIFIC BELLS, L.L.C.,

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:17-CV-746

Before KING, HIGGINSON, and DUNCAN, Circuit Judges.

PER CURIAM:*

Max Simmons appeals the district court's dismissal of his lawsuit, arising out of his termination from a Taco Bell restaurant operated by Pacific Bells, L.L.C. Simmons alleges that he was fired because he served on a jury and refused to lie to avoid jury service. The district court granted summary judgment for Pacific Bells, finding that no private cause of action exists under the Mississippi statute prohibiting employers from retaliating against employees for jury service. The district court also found that there was no

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-60001

genuine dispute of material fact regarding whether Simmons was fired for refusing to lie to avoid jury service. For the following reasons, we REVERSE and REMAND.

## I.

## A.

Max Simmons began working for a Taco Bell restaurant operated by Pacific Bells, L.L.C. ("Pacific Bells") in February 2017. Simmons was hired as a "bench" general manager, a position intended to train an employee to become a restaurant general manager ("RGM"). Carolyn Henderson, the RGM of the Taco Bell on Highway 80 East in Jackson, Mississippi, where Simmons worked, supervised his training and performance. The Taco Bell had two other managers: Lamesha Taylor, the assistant manager, and Thelma Dobson, the shift manager.

In mid-July 2017, Simmons received a jury summons requiring him to appear on July 31, and he alleges that he told Henderson about the summons soon after receiving it. According to Simmons, Henderson instructed him to "find a way to get out of jury duty." Simmons instead requested time off for jury duty, as well as two additional days so that he could visit family. He made these requests two weeks in advance.

Despite this request, Henderson scheduled Simmons to work. In response, Simmons texted Henderson on July 23: "I requested the 29 and 30 of July! . . . I have jury duty on the 31 of July. Please do not Schedule [sic] to work." Four days later, Simmons texted Annette Banger, the equivalent of the local district manager for Pacific Bells: "I asked to be off this coming WEEKEND . . . I have JURY DUTY AT 800 am Monday morning. I can not close Sunday. I need your help with this matter plz [sic]." Simmons also called the employee hotline the next day to voice his concerns. Banger later told

No. 19-60001

Simmons that he did not have to work past Friday, and Simmons did not work that weekend or while he was scheduled for jury duty on July 31.

Simmons was selected for jury service and served from August 1 through August 8, 2017. When he returned to work, Henderson and Banger told Simmons that he was fired due to his tardiness. This was the first time Simmons was reprimanded for being late. Simmons was sometimes tardy, even by several hours, but he claimed that his tardiness often resulted from Pacific Bells's business practices. For example, the company required him to transport products from other Taco Bell locations on his way to work, and he was encouraged to arrive late or leave early to reduce overtime costs when business was slow. Other employees were tardy more frequently than Simmons, but they were not terminated. Before Simmons's termination, Henderson sent an email to a colleague stating: "I have several routes I can go with his termination. The ones I want to focus on will be excessive tardiness or changing time in [the time-keeping] system."

**B.**

Simmons filed suit against Pacific Bells, alleging that his termination violated Mississippi law and public policy. Specifically, Simmons alleged that his termination due to tardiness was pretextual and that he was really fired for refusing to lie to avoid jury duty and for his subsequent jury service.

Pacific Bells moved for summary judgment, arguing that Mississippi law does not permit a private cause of action for employees terminated because of jury service. Pacific Bells also argued that Simmons's termination did not violate Mississippi law because Banger, the person who decided to fire Simmons, had no knowledge of his alleged refusal to lie to avoid jury service. Although Henderson recommended firing Simmons to Banger and was present for his termination, Henderson stated in an affidavit that her recommendation predated her knowledge of Simmons's jury summons. The district court

3

No. 19-60001

accepted both arguments and granted summary judgment dismissing Simmons's claims.

## II.

We review a grant of summary judgment de novo. *Guilbeau v. Hess Corp.*, 854 F.3d 310, 311 (5th Cir. 2017). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In reviewing a motion for summary judgment, the "court construes 'all facts and inferences in the light most favorable to the nonmoving party.'" *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014) (quoting *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012)).

In doing so, the court must "disregard all evidence favorable to the moving party that the jury is not required to believe," which may include evidence from interested witnesses. *Thomas v. Great Atl. & Pac. Tea Co.*, 233 F.3d 326, 329 (5th Cir. 2000).[1] If the "moving party's affidavit raises subjective questions such as motive, intent, or conscience," cross-examination, not summary judgment, is the "best means of testing the credibility of this kind of evidence." 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2727.2 (4th ed. 2016) (citing *Alabama Great S. R. Co. v. Louisville & N.R. Co.*, 224 F.2d 1, 5 (5th Cir. 1955)). Consequently, summary judgment

---

[1] The precise definition of an interested witness has remained elusive. *See, e.g., Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 898 (5th Cir. 2002) (noting that the definition "cannot be so broad" as to require disbelieving all corporate agents). Nonetheless, the definition includes those with a "direct and private interest in the matter at issue." *Interested witness, Black's Law Dictionary* (11th ed. 2019).

No. 19-60001

is often precluded when "employees allege that other legally improper motives were the basis for some adverse employment decision" because that raises "questions of fact regarding the employer's knowledge or state of mind." 10B Wright & Miller, *supra*, at § 2732.3.

## III.

Mississippi law prohibits employers from "persuad[ing] or attempt[ing] to persuade any juror to avoid jury service" or "subject[ing] an employee to adverse employment action as a result of jury service." Miss. Code Ann. § 13-5-35. Mississippi law also provides a "narrow public policy exception to the employment at will doctrine . . . [for] an employee who refuses to participate in an illegal act." *McArn v. Allied Bruce-Terminix Co.*, 626 So. 2d 603, 607 (Miss. 1993).

We first evaluate whether Mississippi tort law allows Simmons to sue his employer for terminating him in violation of § 13-5-35. We then evaluate whether there is a genuine dispute of material fact regarding whether Simmons was fired as a result of his refusal to lie to avoid jury service. We conclude in favor of Simmons on both counts.

## A.

We apply Mississippi substantive law to determine whether an employer may be liable for a wrongful discharge of an employee for serving on a jury.  If the "State's highest court has not spoken on the direct question," we must make an "*Erie* guess and determine" how the State's highest court would resolve the issue. *Jatera Corp. v. U.S. Bank Nat'l Ass'n*, 917 F.3d 831, 835 (5th Cir. 2019) (citation omitted). To do so, we "may look to the decisions of intermediate appellate state courts for guidance." *ExxonMobil Corp. v. Elec. Reliability Servs., Inc.*, 868 F.3d 408, 414 (5th Cir. 2017) (quoting *Howe v. Scottsdale Ins. Co.*, 204 F.3d 624, 627 (5th Cir. 2000)). If these cases do not exist, we look to other sources such as "(1) decisions of the Mississippi Supreme Court in

analogous cases, (2) the rationales and analyses underlying Mississippi Supreme Court decisions on related issues, [and] (3) dicta by the Mississippi Supreme Court." *Centennial Ins. Co. v. Ryder Truck Rental, Inc.*, 149 F.3d 378, 382 (5th Cir. 1998).

We conclude that an employee may sue his employer for wrongfully discharging him for serving on a jury in violation of § 13-5-35. While the Mississippi Supreme Court has not directly addressed the issue, we find *Swindol v. Aurora Flight Sciences Corp.*, 194 So. 3d 847 (Miss. 2016), instructive. That case concerned a Mississippi statute stating that employers may not "establish, maintain, or enforce any policy or rule that has the effect of prohibiting a person from transporting or storing a firearm in a locked vehicle in any parking lot, parking garage, or other designated parking area." Miss. Code Ann. § 45-9-55.

The court determined that this statute created a statutory exception to Mississippi's employment-at-will doctrine and therefore could be vindicated through a wrongful discharge tort action. *Swindol*, 194 So. 3d at 852-54. In doing so, the court recognized a line of caselaw that permits employees to "be discharged at the employer's will for good reason, bad reason, or no reason at all, *excepting only reasons independently declared legally impermissible.*" *Id.* at 854 (emphasis in original) (quoting *McArn*, 626 So. 2d at 606)). The *Swindol* court reasoned that, by enacting a statutory restriction on employers, the Mississippi legislature "independently declared via Section 45-9-55 that terminating an employee for having a firearm inside his locked vehicle is legally impermissible." *Id.* (internal quotation marks omitted).[2] The *Swindol*

---

[2] The court also found support for this interpretation in the Mississippi Constitution and the state's concealed-carry law, both of which provide additional rights to gunowners. *Id.* at 853-54; *see also* Miss. Const. art. 3, § 12 (granting "citizens the right to keep and bear arms"); Miss. Code Ann. § 97-37-1(2) (noting that carrying a firearm within a vehicle is not a crime).

No. 19-60001

court therefore concluded that "[w]hile Mississippi is an at-will employment state, that doctrine is not absolute. . . . [T]he doctrine must yield to express legislative action and/or prohibitions found in federal or state law." *Id.* at 855.

We see no compelling reason to distinguish *Swindol*. Section 13-5-35(1) states that "[i]t shall be unlawful for any employer . . . to persuade or attempt to persuade any juror to avoid jury service; to intimidate or to threaten any juror in that respect; or to remove or otherwise subject an employee to adverse employment action as a result of jury service." The statute also states that "[a]ny violation . . . shall be deemed an interference with the administration of justice and a contempt of court and punishable as such." *Id.* at § 13-5-35(3). Like the statute at issue in *Swindol*, the Mississippi legislature independently declared via § 13-5-35 that terminating an employee for jury service is legally impermissible.[3] Accordingly, the employment-at-will doctrine must yield to the express legislative prohibitions found in § 13-5-35.

Pacific Bells's attempt to distinguish *Swindol* is unavailing. Pacific Bells argues that, unlike the statute at issue in *Swindol*, § 13-5-35 contains an express remedy—violations "shall be deemed an interference with the administration of justice and a contempt of court and punishable as such"—so the statute should not be read to support tort liability. § 13-5-35(3). Under Mississippi law, however, the explicit potential for criminal punishment leans in favor of finding a cause of action. *See Swindol*, 194 So. 3d at 849 (noting that the "court based its decision largely on the lack of a statutory provision expressly making it a crime" (citing *Kelly v. Miss. Valley Gas Co.*, 397 So. 2d 874, 876 (Miss. 1981))). Regardless, the language in *Swindol* is clear, and it

---

[3] Like *Swindol*, the Mississippi Constitution also protects the underlying activity at issue. Miss. Const. art. 3. § 31 ("The right of trial by jury shall remain inviolate."); *see also id.* at § 26 (establishing the right to a "speedy and public trial by an impartial jury").

does not rely on the absence of an express statutory remedy.[4] We therefore hold that Simmons may sue his employer for wrongfully terminating him in violation of § 13-5-35.

## B.

We next address whether there was a genuine issue of material fact regarding whether Simmons was fired over his refusal to participate in an illegal act by lying to avoid jury service. We find that a jury could conclude that Simmons was fired as a result of his refusal to lie, and therefore summary judgment was inappropriate.

While Mississippi is an at-will-employment state, it is undisputed that there is a "narrow" public-policy exception that permits an employee to sue for wrongful termination if the employee is discharged for "refus[ing] to participate in an illegal act" or for "reporting illegal acts of his employer." *McArn*, 626 So. 2d at 607. To prevail on this claim, the "plaintiff must establish some causation between . . . the alleged misconduct and the decision process resulting in the discharge." *Dismuke v. City of Indianola*, 32 F. App'x 126, at *4 (5th Cir. 2002) (unpublished) (per curiam) (citing *Hust v. Forrest Gen. Hosp.*, 762 So. 2d 298, 301-02 (Miss. 2000)). Under a cat's-paw theory, a supervisor's recommendation to terminate an employee can serve as the proximate cause of an independent decisionmaker's decision to do so. *See, e.g.*, *Zamora v. City*

---

[4] Pacific Bells also asserts that *Swindol* relied on § 49-5-55(5) to authorize a private cause of action. This argument misreads *Swindol*. Section 49-5-55(5) provides that employers shall not be liable for damages "resulting from or arising out of an occurrence involving the transportation, storage, possession or use of a firearm covered by this section." The court noted that this section merely limited the liability of employers "for the actions of *employees or third parties*" in the context of firearm storage. *Swindol*, 194 So.3d at 854. This addressed the defendant's argument that the subsection immunized employers from all liability, including for firing employees. In other words, the *Swindol* court did not rely on § 49-5-55(5) for its holding that the statute established "express legislative action" and "state law prohibitions" under the Mississippi wrongful discharge tort.

*of Houston*, 798 F.3d 326, 331-32 (5th Cir. 2015) (noting that "cat's paw analysis remains viable in the but-for causation context").[5]

Pacific Bells asserts that Simmons cannot establish that his refusal to lie caused his termination. The company points to statements by Banger that she was unaware of Simmons's alleged refusal to lie and that Henderson recommended Simmons's termination before knowing about his jury summons. Nonetheless, Pacific Bells bears the burden of proof as the moving party. Pacific Bells puts forth no contemporaneous evidence demonstrating that Simmons's termination was decided before his jury summons. And a jury is not required to believe the statements of interested witnesses. Henderson is an interested witness because she has a direct and private interest in the matter; she allegedly instructed Simmons to commit an illegal activity (lying to avoid jury service) and recommended his termination because of his failure to do so.[6]

In contrast, Simmons has produced circumstantial evidence that a reasonable jury could credit. He raised specific facts indicating that his termination for tardiness may have been pretextual. First, Simmons was tardy less often than other coworkers, yet those coworkers were not terminated and did not suffer adverse employment action. Second, he was never once warned about his tardiness prior to his termination. Third, Simmons demonstrated that some of his tardiness resulted from Pacific Bells's business practices. Fourth, he was terminated immediately following his jury service. Fifth, the individual who told Simmons to lie recommended his termination and was

---

[5] The parties conceded at oral argument that Mississippi recognizes a cat's-paw theory of employer liability. "The term 'cat's paw' derives from a fable conceived by Aesop. . . . In the fable, a monkey induces a cat by flattery to extract roasting chestnuts from the fire. After the cat has done so, burning its paws in the process, the monkey makes off with the chestnuts and leaves the cat with nothing." *Staub v. Proctor Hosp.*, 562 U.S. 411, 415 n.1 (2011).

[6] We need not address whether Banger is an interested witness and therefore express no position on the issue.

present for it. Sixth, the individual who terminated Simmons stated in an email that she had "several different routes I can go with his termination. . . . I want to focus on [his] excessive tardiness."

In sum, the timing of Simmons's termination, combined with the arguably pretextual rationale for his firing, could lead a reasonable jury to conclude that he was fired as a result of his refusal to lie to avoid jury service. Simmons does not need to establish that Banger fired him because of his refusal to lie. He only needs to demonstrate that Henderson's recommendation caused his termination and that her recommendation was motivated by his refusal to lie.

This factual dispute is within the province of the jury. A trial will permit a jury to weigh the evidence and assess the credibility of Banger's, Henderson's, and Simmons's assertions with the benefit of cross-examination. We find that summary judgment was inappropriate because there is a genuine dispute of material fact whether Simmons was fired as a result of his refusal to lie.

## IV.

We REVERSE and REMAND for further proceedings consistent with this opinion.